DAWN SULLIVAN *v.* YALE-NEW HAVEN
HOSPITAL, INC., ET AL.
(AC 19462)

Foti, Dranginis and Hennessy, Js.

Argued January 23—officially released August 7, 2001

*William T. Shea*, for the appellant (substitute plaintiff).

*Peter T. Fay*, for the appellee (named defendant).

*Augustus R. Southworth III*, with whom, on the brief, was *Leslie R. Gold*, for the appellees (defendant Arthur Levy et al.).

*Opinion*

HENNESSY, J. The substitute plaintiff, Patricia Sullivan,[1] appeals from the judgment rendered following

---

[1] The plaintiff, Dawn Sullivan, commenced this medical malpractice action against the defendants and died during the pendency of the litigation. Her mother, Patricia Sullivan, was appointed administratrix of her estate and was substituted as the party plaintiff in this matter.

the trial court's granting of the motions for summary judgment filed by the defendants, Yale-New Haven Hospital, Inc., Arthur Levy, and Medical Oncology and Hematology, P.C. (Medical Oncology). The substitute plaintiff claims that the trial court improperly (1) granted the defendants' motions to preclude expert testimony, (2) denied her motion to continue the case assigned for trial and her motions for a continuance of the summary judgment and trial proceedings, (3) granted the defendants' motions to preclude the substitute plaintiff from offering the testimony of expert witnesses at trial, (4) refused her request to file objections and affidavits in opposition to the defendants' supplemental motions for summary judgment, (5) heard the defendants' supplemental motions for summary judgment on January 25, 1999, (6) granted the defendants' supplemental motions for summary judgment, (7) found an abuse of process by the substitute plaintiff's counsel and (8) considered the deposition testimony of the substitute plaintiff's expert witness when granting the defendants' supplemental motions for summary judgment. We affirm the judgment of the trial court.[2]

The court had before it the following facts. On October 2, 1990, the plaintiff, Dawn Sullivan, was diagnosed

---

[2] We note that the record does not contain either a written memorandum of decision or a transcribed copy of an oral decision, signed by the court, with regard to the trial court's decision granting the defendants' supplemental motions for summary judgment. See Practice Book § 64-1. "The duty to provide [the Appellate Court] with a record adequate for review rests with the appellant. *Chase Manhattan Bank/City Trust* v. *AECO Elevator Co.*, 48 Conn. App. 605, 607, 710 A.2d 190 (1998); see also Practice Book § 61-10. This court has declined to review claims where the appellant has failed to provide the court with an adequate record for review. *Chase Manhattan Bank/City Trust* v. *AECO Elevator Co.*, supra, 609; *Emigrant Savings Bank* v. *Erickson*, 46 Conn. App. 51, 54, 696 A.2d 1057, cert. denied, 243 Conn. 921, 701 A.2d 341 (1997)." (Internal quotation marks omitted.) *Crystal Lake Clean Water Preservation Assn.* v. *Ellington*, 53 Conn. App. 142, 145–46 n.7, 728 A.2d 1145, cert. denied, 250 Conn. 920, 738 A.2d 654 (1999). We review the substitute plaintiff's claims, however, because the unsigned transcript reveals the basis of the trial court's findings. See id.

as suffering from leukemia. She was treated by Levy and his associates at Medical Oncology and was released from Yale-New Haven Hospital, Inc. (hospital), on October 20, 1990, in complete remission. Following the advice of Levy, the plaintiff underwent additional chemotherapy at the hospital and suffered side effects therefrom. By early December, 1990, the plaintiff exhibited severe difficulties, including blindness, acute aphasia and neurological disabilities, that resulted in an inability to walk unassisted. The plaintiff continued treatment with Levy and his associates until November, 1992, when she became the patient of Jonathan Sporn, an oncologist at the University of Connecticut Health Center. The plaintiff died at the health center on January 1, 1994.

The original complaint filed by the plaintiff on December 3, 1993, was a three count action that sounded in negligence and sought damages for loss of sight and neurological impairment as a result of the defendants' inappropriate administration of the chemotherapy agent, ARA-C, which was prescribed by Levy to treat the plaintiff's leukemia beginning in December, 1990. On September 19, 1995, an amended complaint was filed by the substitute plaintiff, Patricia Sullivan, administratrix of the estate of the plaintiff, which added a claim that the plaintiff's death was related to the defendants' treatment of her in December, 1990. The defendants filed supplemental motions for summary judgment[3] on the ground that the substitute plaintiff could not pursue her claims in the absence of expert

_____

[3] The defendants first filed motions for summary judgment claiming that the substitute plaintiff had failed to commence this action within the two year statute of limitations period. The court denied those motions on the ground that "the question of when a reasonably diligent person would have become aware of actionable harm under the circumstances of this case is an issue of fact that must be resolved by the jury." The defendants then filed motions for permission to file supplemental motions for summary judgment, which were granted by the court.

testimony that the defendants had deviated from the applicable standard of care. The defendants' supplemental motions for summary judgment were granted, and, thereafter, the substitute plaintiff filed this appeal.

I

The substitute plaintiff first claims that the court improperly allowed a hearing on January 11, 1999, which concerned the defendants' motions to preclude expert testimony, to go forward without the presence of the substitute plaintiff's counsel. Specifically, the substitute plaintiff claims that the court abused its discretion by refusing to continue oral argument on the motions to the next day or to any other day available after the court was informed that the substitute plaintiff's counsel could not be present due to medical reasons. We disagree.

Our review of a trial court's denial of a continuance is governed by the abuse of discretion standard. *Lawson* v. *Whitey's Frame Shop*, 42 Conn. App. 599, 612, 682 A.2d 1016 (1996), rev'd in part on other grounds, 241 Conn. 678, 697 A.2d 1137 (1997). "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Medley*, 48 Conn. App. 662, 665–66, 711 A.2d 1191, cert. denied, 245 Conn. 915, 718 A.2d 19 (1998). "There is no hard and fast rule by which an abuse of discretion may be determined but, in general, for an exercise of discretion not to amount to an abuse, it must be legally sound and there must be an honest attempt by the court to do what is right and equitable under the circumstances of the law, without the dictates of whim or caprice." Id., 666; see

also *State* v. *Tubbs*, 52 Conn. App. 636, 642, 727 A.2d 776 (1999).

In the present case, both sides agreed to go forward with the hearing on January 11, 1999, concerning the defendants' motions to preclude the substitute plaintiff from offering the testimony of expert witnesses. On that date, the court was informed by the court clerk and counsel for the defendants that the substitute plaintiff's counsel, who had returned from vacation the day before, could not appear at the hearing because of the dilation of his eyes earlier in the day. The court then reviewed the file and had his clerk inquire with the caseflow office to ascertain whether the substitute plaintiff had filed a motion for a continuance or an objection to the defendants' motions. Upon learning that no such motions had been filed and considering that a trial date was set for two weeks from that date, the court proceeded with the hearing and granted the defendants' motions.

Under these circumstances, the ruling of the court was legally sound because (1) the substitute plaintiff's counsel had agreed to the date of the hearing, (2) the substitute plaintiff's counsel had not followed the proper procedure for requesting a continuance and (3) the trial date was only two weeks away. The court, therefore, had good reason to move ahead with the scheduled hearing. Furthermore, the court, a short time later, vacated its decision, reheard argument with all counsel present and granted the defendants' motions. Accordingly, we conclude that the court did not abuse its discretion, and the substitute plaintiff did not suffer an injustice by the court's actions.

II

The substitute plaintiff next contends that the court abused its discretion when it denied her written motion dated January 21, 1999, for a continuance of the January

25, 1999 trial assignment date. The substitute plaintiff also claims that the court abused its discretion when it denied her written motion dated January 25, 1999, for a continuance of the hearing on the defendants' supplemental motions for summary judgment to be held on that date. The court heard argument and denied both motions on January 25, 1999, the day the trial was to commence.

The substitute plaintiff specifically claims that the court's refusal to grant the continuance prevented her from taking depositions and from filing written objections and affidavits in opposition to the defendant's motions for summary judgment. The substitute plaintiff further argues that the defendants offered no reason why the court should deny her motion for a continuance and that she offered to reimburse any expense incurred by defense counsel as a result of their attending the January 25, 1999 hearing.

Our review of the denial of a motion for a continuance by the trial court is limited to the abuse of discretion standard. *Lawson* v. *Whitey's Frame Shop*, supra, 42 Conn. App. 612. Accordingly, we will make every reasonable presumption in favor of the correctness of the court's ruling and will reverse its judgment "only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Medley*, supra, 48 Conn. App. 665–66. "We are especially hesitant to find an abuse of discretion where the court has denied a motion for continuance made on the day of the trial." (Internal quotation marks omitted.) *Lawson* v. *Whitey's Frame Shop*, supra, 612.

Counsel for defendants Levy and Medical Oncology argued to the court that the matter had been pending since July or August, 1998, that there had been a number of continuances granted to the substitute plaintiff to

obtain expert testimony and that, after many delays, the court had ruled that the substitute plaintiff was thereafter precluded from introducing expert testimony. Counsel also argued that on January 14, 1999, the court had set this matter down for a hearing on January 25, 1999, and that the substitute plaintiff had failed to file an opposition to the motions for summary judgment other than to request a continuance. Counsel for the defendant hospital argued that the supplemental motions for summary judgment had been pending since July and that the substitute plaintiff's reasons for seeking a continuance, namely, to obtain further discovery from the hospital and to depose Levy, were unavailing in light of the court's previous ruling that the substitute plaintiff was precluded from offering expert testimony.

In the present case, the court denied the motions for a continuance after reviewing the history of the case and finding that, for some period of time, the case had been set down for trial on January 25, 1999, and that on January 14, 1999, the court clearly had stated that it also was going to consider the supplemental motions for summary judgment on January 25, 1999. Furthermore, the court found that the substitute plaintiff had not offered good cause for granting the continuance. Accordingly, we find that the court did not abuse its discretion and that the substitute plaintiff did not suffer an injustice.

### III

The substitute plaintiff next argues that the court abused its discretion in granting the defendants' motions to preclude all expert testimony when the substitute plaintiff had provided the names of expert witnesses, their addresses and the general tenor of their expected testimony. Specifically, the substitute plaintiff claims that both expert witnesses, Robert Koch, Jr., of the St. Petersburg, Florida, Medical Center, and Michael Insler, professor of ophthalmology at the LSC Eye Center in New Orleans, Louisiana, opined that the defendants had violated the standard of care in treating the plaintiff's leukemia. The substitute plaintiff further claims that she properly disclosed their opinions[4] and offered the opportunity to com-

---

[4] The substitute plaintiff's disclosure of expert witnesses stated: "Insler is expected to testify [that] the care and treatment provided to Dawn Sullivan in

plete the defendants' knowledge of their opinions by use of sworn depositions, via telephone, all of which complied with the court's order of October 26, 1998, to disclose her expert witnesses. The defendants argue that the substitute plaintiff's disclosure of her experts failed to comply with Practice Book § 13-4[5] and the court's order that full disclosure be completed by November 25, 1998.

Our Supreme Court recently discussed this type of issue in *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 17–18, 776 A.2d 1115 (2001). We review this claim under the standards of review described therein. In *Millbrook*, our Supreme Court stated: "[F]or a trial court's order of sanctions for violation of a discovery order to withstand scrutiny, three requirements must be met.

"First, the order to be complied with must be reasonably clear. In this connection, however, we also state that even an order that does not meet this standard may form the basis of a sanction if the record establishes that, notwithstanding the lack of such clarity, the party sanctioned in fact understood the trial court's intended meaning. This requirement poses a legal question that we will review de novo.

December, 1990, was not within the accepted standard of care and was a serious departure from then prevailing standards of care." The substitute plaintiff also used the identical language in disclosing Koch as an expert witness.

[5] Practice Book § 13-4 (4) provides in relevant part: "In addition to and notwithstanding the provisions of subdivisions (1), (2) and (3) of this rule, any plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within a reasonable time prior to trial. . . . If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subsection, or if an expert witness who is expected to testify is retained or specially employed after a reasonable time prior to trial, such expert shall not testify if, upon motion to preclude such testimony, the judicial authority determines that the late disclosure (A) will cause undue prejudice to the moving party; or (B) will cause undue interference with the orderly progress of trial in the case; or (C) involved bad faith delay of disclosure by the disclosing party. Once the substance of any opinion or opinions of an expert witness who is expected to testify at trial becomes available to the party expecting to call that expert witness, disclosure of expert witness information shall be made in a timely fashion in response to interrogatory requests pursuant to subdivision (1) (A) of this rule, and shall be supplemented as required pursuant to Section 13-15. Any expert witness disclosed pursuant to this rule within six months of the trial date shall be made available for the taking of that expert's deposition within thirty days of the date of such disclosure. . . ."

"Second, the record must establish that the order was in fact violated. This requirement posses a question of fact that we will review using a clearly erroneous standard of review.

"Third, the sanction imposed must be proportional to the violation. This requirement poses a question of the discretion of the trial court that we will review for abuse of that discretion." Id., 17–18.

We conclude that the court's discovery order satisfied the first prong of the *Millbrook* test in that it was "reasonably clear." The order merely required the substitute plaintiff to comply with the rules of practice.

The dispositive issue of this claim is whether the trial court's finding was clearly erroneous under the second prong of the *Millbrook* test. The court found that the substitute plaintiff's disclosure of her experts did "not comport with the disclosure requirements of the Practice Book because it [did] not, except in the most cursory fashion possible, state the substance of the facts and opinions to which the expert[s were] expected to testify, and it certainly [did not] state anything that could conceivably be called a summary of the grounds for each opinion." The court further found that there had been an abuse of process by the substitute plaintiff and, on the date of trial, that there were no reports of any experts and no proposed plan for having them deposed.[6] We agree with the court.

Practice Book § 13-4 (4) requires "any plaintiff expecting to call an expert witness at trial [to] disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within a reasonable time prior to trial. . . ." The court has the authority, pursuant to § 13-4 (4), to preclude the testimony of an expert if, upon motion, the

---

[6] The substitute plaintiff suggested that the depositions of the two expert witnesses, one in Florida and one in Louisiana, take place by telephone. The defendants argued, and we agree, that the depositions of the experts, in a matter involving a wrongful death in a medical malpractice case, should take place with the experts present so that the parties could question them thoroughly and observe their demeanor.

judicial authority determines that the late disclosure will cause undue prejudice to the moving party or undue interference with the orderly progress of trial of the case, or that the delay involved bad faith by the disclosing party. Practice Book § 13-4 (4).

After reviewing the record, we conclude that the court had before it adequate evidence upon which to find that substitute plaintiff's disclosure did not comply with the requirements of Practice Book § 13-4 (4). Thus, its ruling was not clearly erroneous. Additionally, the mailing of the defective disclosure to the defendants to inform them that no one, including the substitute plaintiff's counsel, who was on vacation, would be available for a deposition until January 11, 1999, for a January 25, 1999 trial that involved a wrongful death action based on medical malpractice was, as the court found, an abuse of process. Moreover, the court's exclusion of the expert testimony as a sanction for violating the court's discovery order is proportional to the violation and therefore satisfies the third prong of *Millbrook.* When an individual violates a discovery order as to a particular item of evidence, it is wholly within the discretion of the court to exclude that evidence as punishment for the violation. We, therefore, cannot find that the court abused its discretion in granting the defendants' motions to preclude the substitute plaintiff from presenting expert testimony. Accordingly, the court's decision to exclude the expert testimony is affirmed.

IV

The substitute plaintiff next claims that the court, after precluding the expert testimony, abused its discretion in refusing her request to present arguments or affidavits in support of her claim that negligence could be established without expert testimony.

The substitute plaintiff specifically argues that the defendants negligently administered a highly toxic drug and that such negligence can be proven without employing expert testimony. In support of this position, she cites *Bourquin v. B. Braun Melsungen,* 40 Conn. App. 302, 670 A.2d 1322, cert. denied, 237 Conn. 909, 675 A.2d 456 (1996). In *Bourquin,* the trial court denied the plaintiff's pretrial

motion to amend his complaint. On appeal to this court, we reversed the trial court, concluding that the requested amendment did not enlarge the specifications of negligence or inject new facts into the case of which the defendant was unaware, that it was filed promptly after the need for it became apparent and that it would not have delayed the trial so as to prevent the defendant from preparing a defense. Id., 312–13. Additionally, the focus of the amendment was to claim that the defendant had failed to heed the warnings on the box in which human tissue had been received and had failed to investigate the significance of those warnings. In *Bourquin*, we concluded that the significance of those warnings was not such a complex issue as to require expert testimony. Id., 316.

*Bourquin*, however, is inapposite to the present case. Here, the substitute plaintiff has presented a new theory on the day of the trial that would have required a delay in the trial for arguments to take place on the issue of whether expert testimony was necessary to determine if a chemotherapy drug was administered negligently. The court found that to prove medical malpractice under Connecticut law, with certain exceptions that are not applicable here, there must be expert evidence to show that the defendants in the present case breached the applicable standard of care. The evidence proffered by the substitute plaintiff—photographs of the plaintiff before and after her hospital stay—did not address the required standard of care or the defendants' alleged breach of that standard. The substitute plaintiff's argument that the trial should have been delayed for her to obtain hospital records in an attempt to show that the defendants' monitoring and administration of ARA-C was negligent is unavailing. The court stated, and we agree, that the substitute plaintiff alleged in her complaint a breach of a standard of care by a health provider and, to establish that breach, expert testimony was required. No expert testimony was properly brought before the court and, therefore, the substitute plaintiff's argument must fail. Accordingly, we conclude that the trial court did not abuse its discretion in refusing the substitute plaintiff's request.

## V

The substitute plaintiff next claims that the court abused its discretion in hearing the defendants' motions for summary judgment without first scheduling and hearing motions for permission to file supplemental motions for summary judgment in accordance with Practice Book § 17-44.[7] Specifically, she claims that the court never gave the defendants permission to file motions for summary judgment relative to the issue of expert testimony and, thereby, did not afford her "the opportunity to prepare for any motion for summary judgment."

The record indicates that the defendants filed motions for permission to file supplemental motions for summary judgment dated August 21, 1998, to supplement their initial motions for summary judgment dated June 24, 1998, on the ground that the substitute plaintiff had failed to produce expert testimony concerning the standard of care. The motions for permission to file supplemental motions for summary judgment were granted on September 29, 1998. A hearing on the supplemental motions for summary judgment was scheduled for January 25, 1999. The substitute plaintiff had approximately four months to prepare from the court's decision granting the defendants' motions for permission to file supplemental motions for summary judgment to when the court heard argument on the defendants' supplemental motions for summary judgment. Accordingly, we find that the court did not abuse its discretion in this matter.

## VI

The substitute plaintiff next claims that the court improperly granted the defendants' supplemental motions for summary judgment when the plaintiff's treating oncologist had been noticed properly and could

---

[7] Practice Book § 17-44 provides in relevant part: "[A]ny party may move for a summary judgment at any time, except that the party must obtain the judicial authority's permission to file a motion for summary judgment after the case has been assigned for trial. . . ."

have been used as an expert. Additionally, the substitute plaintiff claims that she should have been allowed to proceed with her claim that the failure to administer ARA-C properly is an issue that is not so complex as to require expert testimony. Because the substitute plaintiff has failed to analyze and to brief this claim properly on appeal, it is deemed abandoned. See *In re Bruce R.*, 234 Conn. 194, 215–16, 662 A.2d 107 (1995) (appellate court may decline to review claims not properly briefed and analyzed); *State* v. *Henderson*, 47 Conn. App. 542, 558–59, 706 A.2d 480, cert. denied, 244 Conn. 908, 713 A.2d 829 (1998) (same).

## VII

The substitute plaintiff next argues that the court abused its discretion "by casting aspersions upon [her] counsel" and "suggesting some sort of abuse of process relative to compliance with Practice Book § 13-4" and, thereby, displayed a prejudicial attitude toward her counsel. The substitute plaintiff refers us to the trial transcript dated January 25, 1999. She has not referenced, however, specific pages from which we can determine whether the trial court did cast aspersions on her counsel, nor did she refer us to specific portions of the twenty-one pages of transcript in which the trial court suggests some sort of abuse of process. Claims not properly briefed on appeal will not be reviewed by this court and will be treated as having been abandoned. *In re Bruce R.*, supra, 234 Conn. 215; *State* v. *Henderson*, supra, 47 Conn. App. 558–59.

## VIII

The substitute plaintiff finally claims that the court improperly granted the defendants' supplemental motions for summary judgment on the basis of the deposition testimony of Sporn, the plaintiff's treating oncologist. Specifically, she contends that the deposition testimony of Sporn should not have been deemed

to be conclusive and, therefore, that she should have been allowed to clarify or contradict it at trial. We disagree.

Our standard of review of a trial court's decision to grant a motion for summary judgment is well established. "A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits . . . . The adverse party prior to the day the case is set down for short calendar shall file opposing affidavits and other available documentary evidence . . . ." Practice Book (2000) § 17-45. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Crystal Lake Clean Water Preservation Assn.* v. *Ellington*, 53 Conn. App. 142, 146, 728 A.2d 1145, cert. denied, 250 Conn. 920, 738 A.2d 654 (1999). "A material fact is a fact that will make a difference in the result of the case. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) *Fernandez* v. *Standard Fire Ins. Co.*, 44 Conn. App. 220, 222, 688 A.2d 349 (1997). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Citation omitted; internal quotation marks omitted.) *Crystal Lake Clean Water Preservation Assn.* v. *Ellington*, supra, 146.

"On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the trial court rendered judgment for the [defendants] as a matter of law, our review is plenary and we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the [record]." (Citation omitted; internal quotation marks omitted.) Id., 147. "On appeal, however, the burden is on the opposing party to demonstrate that the trial court's decision to grant the movant's summary judgment motion was clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 222, 435 A.2d 24 (1980). On appeal, we review the affidavits to determine whether the opposing party sustained that burden." *2830 Whitney Avenue Corp.* v. *Heritage Canal Development Associates, Inc.*, 33 Conn. App. 563, 567, 636 A.2d 1377 (1994). On the basis of our review of the record, we conclude that the substitute plaintiff has not demonstrated that the trial court improperly granted the defendants' supplemental motions for summary judgment.

The defendants' supplemental motions for summary judgment and accompanying affidavits allege that the substitute plaintiff has failed to produce expert testimony against the defendants on the issue of the standard of care, the alleged breach of the standard of care and causation of injury, and, therefore, the defendants are entitled to summary judgment as a matter of law. The opposing affidavit of the substitute plaintiff, who is the mother of the plaintiff, averred that on the basis of the answers given by the defendants to certain questions, a review of the medical records and correspondence between the physicians, and the literature concerning the chemotherapy drugs that were adminis-

tered, the defendants were negligent in treating the plaintiff.

"This court has approved the grant of a summary judgment in a medical malpractice case when, as in this case, it is evident that the plaintiff will be unable to produce at trial an expert witness to testify regarding the applicable standard of care." *Bourquin* v. *B. Braun Melsungen,* supra, 40 Conn. App. 314; *Guzze* v. *New Britain General Hospital,* 16 Conn. App. 480, 485, 547 A.2d 944, cert. denied, 209 Conn. 823, 552 A.2d 430 (1988). "It is well settled that the plaintiff cannot prevail [in a medical malpractice case] unless there [is] positive evidence of an expert nature from which the jury could reasonably conclude that the defendant was negligent, except where there is manifest such gross want of care or skill as to afford, of itself, an almost conclusive inference of negligence that the testimony of an expert is not necessary." (Internal quotation marks omitted.) *Vinchiarello* v. *Kathuria,* 18 Conn. App. 377, 381–82, 558 A.2d 262 (1989); see also *Puro* v. *Henry,* 188 Conn. 301, 305, 449 A.2d 176 (1982).

In the present case, the substitute plaintiff alleged in her complaint that the defendants' treatment of the plaintiff for T-cell acute lymphocytic leukemia was negligent in that they had failed to develop a proper protocol for the administration of ARA-C, had failed to monitor the administration of ARA-C and had erred in the administration of the proper dosage of ARA-C. The court concluded, and we agree, that expert testimony was necessary to show that the defendants were negligent because the determination of the proper protocol for the administration of ARA-C, the monitoring of the administration of ARA-C, its appropriate dosage and the suitability of ARA-C for the treatment of leukemia are facts not generally within the sphere of common knowledge of a lay person.

Our review of the record reveals that Sporn was the only expert witness that the substitute plaintiff properly disclosed and who would have testified as an expert witness against Levy. Sporn, however, was deposed by the defendants and testified that, in his opinion, the plaintiff was treated with the appropriate standard of care by all of the defendants. Because it was evident that the substitute plaintiff did not produce an expert witness who would have testified that the defendants' had breached the standard of care in their treatment of the plaintiff, the court properly found that the defendants were entitled to judgment as a matter of law. See *Bourquin* v. *B. Braun Melsungen*, supra, 40 Conn. App. 314; *Guzze* v. *New Britain General Hospital*, supra, 16 Conn. App. 485.

It is clear from our review of the record that the conclusion reached by the court—that the substitute plaintiff did not produce expert testimony in support of her claim and, therefore, that the defendants were entitled to judgment as a matter of law—is legally and logically correct and is supported by the facts set out in the record. Accordingly, we conclude that the court properly granted the defendants' motions for summary judgment.

The judgment is affirmed.[8]

In this opinion the other judges concurred.

---

[8] Because we affirm the judgment of the trial court granting the defendants' supplemental motions for summary judgment on the ground that the substitute plaintiff failed to provide expert medical testimony, it is not necessary for us to address the defendants' claims relative to their alternate ground for affirmance, namely, that the substitute plaintiff failed to bring this action within the time period required by the statute of limitations.