HOWARD WEXLER ET AL. *v.* JOHN T. DEMAIO ET AL.
(AC 24737)

Lavery, C. J., and DiPentima and McLachlan, Js.

Argued December 8, 2004—officially released May 10, 2005

*William F. Gallagher*, with whom, on the brief, was *Hugh D. Hughes*, for the appellants (plaintiffs).

*Andrew J. O'Keefe*, with whom, on the brief, was *Joseph M. Busher, Jr.*, for the appellees (named defendant et al.).

*Paul T. Nowosadko*, with whom, on the brief, was *Lorinda S. Coon*, for the appellee (defendant Lynn K. Davis).

*Opinion*

DiPENTIMA, J. In this medical malpractice case, the plaintiffs, Howard Wexler and Judy Wexler, challenge the trial court's preclusion of their proposed expert testimony. The principal issue in this appeal concerns the court's discretion to secure compliance with the disclosure requirements of Practice Book § 13-4 (4) and appropriate sanctions for failure to comply. We affirm the judgment of the trial court.

By amended complaint filed August 7, 1998, the plaintiffs brought an action against the defendant physicians John T. DeMaio, John M. DaSilva, Michael J. Tortora and Lynn K. Davis,[1] alleging damages arising from negligent medical treatment provided to Howard Wexler between November, 1994, and January, 1996. The defendants filed interrogatories and requests for production in the spring of 1998, in which they asked the plaintiffs to identify any expert witness to be called at trial, and to disclose the subject matter, facts and opinions on which the expert was expected to testify, and a summary of the grounds for each opinion. The plaintiffs responded in August, 1998, that the expert disclosure would be

---

[1] DeMaio, DaSilva and Tortora share a medical practice and are represented jointly; Davis is represented separately.

"supplied in accordance with [§ 13-4] of the Practice Book."

On July 10, 2002, the court issued a scheduling order requiring the plaintiffs to disclose their experts by November 30, 2002. The plaintiffs disclosed no expert. On May 5, 2003, Davis filed a motion for summary judgment, maintaining that because the plaintiffs had failed to disclose an expert witness to testify as to the standard of care, they could not meet their burden of proof in the case. On May 19, 2003, the plaintiffs filed a motion for extension of time until July 2, 2003, in which to disclose their expert witness, alleging that the expert retained prior to the commencement of the action was retired and would not testify. At a June 9, 2003 hearing on the motion, the court ordered the plaintiffs to provide an affidavit no later than June 11, 2003, by Thomas J. Airone, the attorney responsible for the case, stating when the expert was hired, when counsel discovered that the expert would be unable to testify and whether another expert was immediately available. An affidavit was filed on June 10, 2003, by attorney William F. Gallagher, in which he stated that the expert had refused to appear in another case handled by his law firm in the spring of 2002, but that it was not until February or March, 2003, that Airone learned that the expert was unavailable. Gallagher stated in the affidavit that he was uncertain whether another expert was available.

The court issued a memorandum of decision on June 12, 2003, granting the plaintiffs' motion to extend time until noon on June 26, 2003. The court found that although the failure to disclose an expert resulted from the negligence of the plaintiffs' counsel, the defense would not be prejudiced by the late disclosure, provided certain conditions were met. The disclosure was to comply fully with § 13-4 (4) and to include the expert's curriculum vitae, a list of all materials and information viewed or considered by the expert and a copy of all

such materials not yet disclosed, as well as a list of all cases in which the expert had testified since January, 1999. The plaintiffs were also ordered to make the expert available for a deposition on specific dates during the first two weeks of July and to bear all costs associated with the deposition.

The plaintiffs filed a disclosure of physician Peter H. Wiernik on the morning of June 26, 2003, which stated that he was expected to testify as to the standards of care that the defendants should have observed in treating Howard Wexler, the deviations from those standards of care and the causal relationship between the two. It further stated that Wiernik was expected to testify that DeMaio, DaSilva and Tortora missed and delayed the effective diagnosis of Howard Wexler's condition, that Davis failed to provide proper treatment once the condition was discovered, and that those failings subjected Howard Wexler to an unnecessary and more risky medical procedure, contributing to his current condition. The expert's opinions were based on his training, education, experience and background, on hospital records, office notes and medical records of the defendants, and on the transcripts of the depositions of Howard Wexler and the defendants. Attached to the disclosure was the expert's curriculum vitae.

On July 3, 2003, Davis filed a motion to preclude Wiernik's testimony, maintaining that the plaintiffs' disclosure was vague, lacked sufficient detail and failed to comply with the court's order and § 13-4. Davis claimed, inter alia, that the disclosure was deficient in that it did not state the expert's opinion as to the standard of care, how that standard had been breached, and how the breach affected Howard Wexler's life and health. In addition, the plaintiffs had provided no list of cases in which the expert had testified. The plaintiffs objected to the motion on the grounds that the disclosure complied with the requirements of § 13-4 (4) and that their

expert had provided a short list of cases in which he had served as an expert witness, none of which had resulted in testimony. Davis responded that he had found at least two cases in which the expert had testified as an expert witness during the relevant period. The other defendants also filed a motion to preclude.

A hearing on Davis' motion to preclude was held on September 4, 2003. The plaintiffs, now represented by Gallagher,[2] proffered a July 7, 2003 e-mail from the expert that listed three cases in which he had been deposed. The plaintiffs claimed that prior to the disclosure, Wiernik had stated that he had no recollection of any testimony offered since January, 1999, and that it was his understanding that the defendants had been provided a copy of the e-mail. The defendants denied having received the e-mail. The court refused to accept the plaintiffs' claim that they had provided the defendants with all the information they possessed regarding prior testimony by Wiernik without testimony from Airone on the matter. The plaintiffs also stated that the expert had been made available for a deposition on the dates required by the court's order. The court found that the disclosure was inadequate because, in addition to the absence of the ordered list of testimony, no detail was provided with respect to the standard of care and the deviation therefrom.

Nevertheless, the court gave the plaintiffs a third opportunity to comply with the expert disclosure requirements. The court ordered the plaintiffs to provide the defendants with a written report from their expert by September 10, 2003, complying with the minimum requirements of § 13-4 (4), which the court proceeded to define in detail. The court also directed the

---

[2] The plaintiffs were represented at all times by the Gallagher Law Firm. Airone was the attorney primarily responsible for the case until he left the firm in August, 2003, when Gallagher assumed responsibility for the case.

plaintiffs to provide a list of all billings for those cases on which the expert had worked and transcripts of any testimony he had given since January, 1999. It further ordered that Wiernik be available for deposition within two weeks. The plaintiffs stated that it would be difficult to comply within the time frame ordered, that supplying the transcripts would be impossible and that although that kind of disclosure was standard practice in the federal courts, it was not provided for by § 13-4. The court responded that it had ordered transcripts to be supplied several months ago and that it was "giving [the plaintiffs] the opportunity to have what amounts to a thirteenth hour compliance."

The plaintiffs filed a supplemental disclosure of their expert on September 25, 2003, which provided more detail as to the expert's expected testimony, but no written report, billing list or transcripts of prior testimony. At a hearing on September 29, 2003, the plaintiffs admitted that they had not complied with the court's order of September 4, 2003. The defendants renewed their motions to preclude and, based thereon, their motions for summary judgment.[3] The plaintiffs acknowledged that were the court to grant the motions to preclude, they could not meet their burden of proof in the case and that summary judgment in favor of the defendants would necessarily follow. The court noted that without the plaintiffs' expert disclosure, the defendants could not adequately prepare for trial. The court thereafter granted the defendants' motions to preclude and their motions for summary judgment. This appeal followed.

The plaintiffs claim that the court improperly precluded their expert's testimony. In particular, they claim that (1) the court's articulation on September 4, 2003,

---

[3] DeMaio, DaSilva and Tortora filed a motion for summary judgment on September 15, 2003.

of its June 12, 2003 order was not reasonably clear and that their disclosure on June 26, 2003, complied with the reasonable meaning of the court's June 12, 2003 order, and (2) the court abused its discretion by requiring that the plaintiffs' disclosure of their expert witness meet the federal standard for disclosure of expert witnesses. We disagree.

I

The plaintiffs maintain that the court's statements during the hearing on September 4, 2003, were, in effect, an articulation of its June 12, 2003 order. They argue that the June 12 order directing disclosure in compliance with Practice Book § 13-4 (4)[1] was reasonably

[1] Practice Book § 13-4 (4) provides: "In addition to and notwithstanding the provisions of subdivisions (1), (2) and (3) of this rule, any plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within a reasonable time prior to trial. Each defendant shall disclose the names of his or her experts in like manner within a reasonable time from the date the plaintiff discloses experts, or, if the plaintiff fails to disclose experts, within a reasonable time prior to trial. If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subdivision, or if an expert witness who is expected to testify is retained or specially employed after a reasonable time prior to trial, such expert shall not testify if, upon motion to preclude such testimony, the judicial authority determines that the late disclosure (A) will cause undue prejudice to the moving party; or (B) will cause undue interference with the orderly progress of trial in the case; or (C) involved bad faith delay of disclosure by the disclosing party. Once the substance of any opinion or opinions of an expert witness who is expected to testify at trial becomes available to the party expecting to call that expert witness, disclosure of expert witness information shall be made in a timely fashion in response to interrogatory requests pursuant to subdivision (1) (A) of this rule, and shall be supplemented as required pursuant to Section 13-15. Any expert witness disclosed pursuant to this rule within six months of the trial date shall be made available for the taking of that expert's deposition within thirty days of the date of such disclosure. In response to any such expert disclosure, any other party may disclose the same categories of information with respect to expert witnesses previously disclosed or a new expert on the same categories of information who are expected to testify at trial on the subject for that party. Any such expert or experts shall similarly be made available

clear until the court articulated on September 4, 2003, that it had intended the disclosure to be a detailed, written medical report. The plaintiffs claim that by ordering the medical report, the court required a more detailed disclosure than that mandated by our rules of practice, something they could not have reasonably deduced from the court's June 12, 2003 order. They contend that because the court's requirement was not reasonably clear from the June 12 order and because they had complied with the reasonable meaning of the order, the sanction of preclusion was improper.

For a court to impose sanctions for the violation of a discovery order, three requirements must be met. "First, the order to be complied with must be reasonably clear. . . . This requirement poses a legal question that we will review de novo. Second, the record must establish that the order was in fact violated. This requirement poses a question of fact that we will review using a clearly erroneous standard of review. Third, the sanction imposed must be proportional to the violation. This requirement poses a question of the discretion of the trial court that we will review for abuse of that discretion." *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 17–18, 776 A.2d 1115 (2001).

### A

After reviewing the record, it is evident that the court's order on September 4, 2003, directing the plaintiffs to supply a written report by the expert in compliance with § 13-4 (4), transcripts of testimony given by the expert and a list of billings made by the expert since January, 1999, was not an articulation of its June 12, 2003 order, but a new discovery order. Faced with what it deemed inadequate compliance with its June order,

for deposition within thirty days of their disclosure. Nothing contained in this rule shall preclude an agreement between the parties on disclosure dates which are part of a joint trial management order."

and the defendants' motions to preclude, and given the fact that trial was to begin in five weeks, the court chose to permit what it termed "thirteenth hour compliance" by the plaintiffs.

The June 12, 2003 memorandum order directed the plaintiffs to disclose their expert in full compliance with the requirements of Practice Book § 13-4 (4). Section 13-4 (4) itself provides in relevant part that "any plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within reasonable time prior to trial. . . ." The initial question, therefore, is whether the June 12, 2003 order was reasonably clear.

The purpose of the discovery rules is to "make a trial less a game of blindman's [buff] and more a fair contest with the basic issues and facts disclosed to the fullest [practicable] extent." (Internal quotation marks omitted.) *Perry* v. *Hospital of St. Raphael*, 17 Conn. App. 121, 123, 550 A.2d 645 (1988). This court has upheld preclusion of expert testimony by the trial court for failure to comply with Practice Book § 13-4 (4) where the plaintiff's disclosure merely stated: "[The expert] is expected to testify [that] the care and treatment provided to [the plaintiff] in December, 1990, was not within the accepted standard of care and was a serious departure from then prevailing standards of care." (Internal quotation marks omitted.) *Sullivan* v. *Yale-New Haven Hospital, Inc.*, 64 Conn. App. 750, 757–58 n.4, 785 A.2d 588 (2001). That disclosure "did not comport with the disclosure requirements of the Practice Book because it [did] not, except in the most cursory fashion possible, state the substance of the facts and opinions to which the [experts were] expected to testify, and it certainly [did not] state anything that could

conceivably be called a summary of the grounds for each opinion." (Internal quotation marks omitted.) Id., 759; see also *Menna* v. *Jaiman*, 80 Conn. App. 131, 135, 137, 832 A.2d 1219 (2003).

In general, the rule requires that the disclosure state the subject matter on which the expert is expected to testify; Practice Book § 13-4 (4); i.e., in a medical malpractice action, the applicable standard of care, the breach thereof, the resulting injury and the attendant causal relationship. See *Edwards* v. *Tardif*, 240 Conn. 610, 615, 692 A.2d 1266 (1997); *Ahern* v. *Fuss & O'Neill, Inc.*, 78 Conn. App. 202, 208–209, 826 A.2d 1224, cert. denied, 266 Conn. 903, 832 A.2d 64 (2003). Furthermore, the disclosure is to state the substance of the facts and opinions about which the expert is expected to testify. Practice Book § 13-4 (4). Substance implies some degree of specificity. For example, in the expert's opinion, what is the specific standard of care and what action or inaction constituted the breach? If an injury has resulted, what might it be and what was its cause? Moreover, if there are multiple defendants, the expert's opinions as to each defendant should be addressed individually. Finally, the disclosure is to provide "a summary of the grounds for *each* opinion . . . ." (Emphasis added.) Practice Book § 13-4 (4). That requirement implies that the disclosure must provide the source or reason for each of the expert's opinions individually.

Having reviewed the rule and relevant case law, we conclude that the June 12, 2003 order was reasonably clear. The plaintiffs were required to disclose the expert's proposed testimony as to each defendant individually. As to each defendant, the disclosure needed to state the standard of care, the action or inaction of the defendant who breached that standard, the specific harm that flowed from the breach and the basis for each of the expert's conclusions.

## B

Having concluded that the order was reasonably clear, we must determine whether the court properly held that the plaintiffs' June 26, 2003 disclosure did not comply with the order. That raises an issue of fact, which we review under the clearly erroneous standard of review. *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, supra, 257 Conn. 17–18. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Shah* v. *Cover-It, Inc.*, 86 Conn. App. 71, 75, 859 A.2d 959 (2004).

At the September 4, 2003 hearing, in finding the plaintiffs' June 26, 2003 disclosure inadequate and not in compliance with its June 12, 2003 order, the court stated that the centerpiece of its concern was the "extraordinarily general nature of this disclosure."[5]

---

[5] The plaintiffs' disclosure read in relevant part as follows: "B. *Subject Matter of Testimony*: The plaintiff[s] [expect] that Dr. Wiernik will testify as to the standard of care Dr. Davis should have observed in attempting to treat the recurrent infectious process and Hairy Cell leukemia of Howard Wexler on or about October 10, 1995. Dr. Wiernik is also expected to testify as to the deviations from the identified standards of care by Dr. Davis, and as to the causal relationship between these deviations and the resultant need for splenectomy suffered by Howard Wexler.

"Dr. Wiernik is further expected to testify as to the standard of care the defendants Dr. DeMaio, Dr. Tortora and Dr. DaSilva should have observed in attempting to treat the recurrent infectious process and Hairy Cell leukemia of Howard Wexler commencing on or about July 8, 1995. Dr. Wiernik is also expected to testify as to the deviations from the identified standards of care by the defendants Dr. DeMaio, Dr. Tortora and Dr. DaSilva, and as to the causal relationship between these deviations and the resultant need for splenectomy suffered by Howard Wexler.

"C. *Substance of Facts and Opinions to Which the Expert is Expected to Testify*: Dr. Wiernik is expected to testify that all the defendants missed and delayed the effective diagnosis of Mr. Wexler's condition. In addition, Dr. Wiernik is expected to testify that Dr. Davis should have immediately treated Mr. Wexler with chemotherapy when the first diagnosis of Hairy

The plaintiffs' disclosure failed to distinguish between DeMaio, Tortora and DaSilva. No standard of care was disclosed for DeMaio, Tortora and DaSilva. The alleged deviations from the standard of care were provided with no specificity. The plaintiffs disclosed that the expert would testify that the defendants' deviations from the standard of care "were substantial factors in contributing to Mr. Wexler's condition," but failed to state the nature of the condition. As grounds for the expert's opinion, the plaintiffs listed his education, experience and the documents he had or would review,

---

Cell leukemia was made, and if Mr. Wexler had been effectively treated with chemotherapy, to a reasonable degree of medical certainty, he would not have required the resultant splenectomy. These deviations from the standard of care were substantial factors in contributing to Mr. Wexler's condition.

"Further, Dr. Wiernik is expected to testify that if the defendant[s] Dr. DeMaio, Dr. Tortora and Dr. DaSilva had not missed and delayed the diagnosis, by continuing to mask the symptoms with antibiotics, to a reasonable degree of medical certainty, Mr. Wexler would not have needed a splenectomy. Further, because the defendants Dr. DeMaio, Dr. Tortora and Dr. DaSilva missed and delayed the diagnosis, the performance of the splenectomy on January 23, 1996 was much more risky, and subjected Mr. Wexler to a much higher potential rate of mortality. These deviations from the standard of care were substantial factors in contributing to Mr. Wexler's condition.

"D. *Summary of Grounds for Each Opinion*: Dr. Wiernik's opinions are based upon his training, education, experience and background as an oncologist and internal medicine specialist, director of the Comprehensive Cancer Center, a member of the OLM Cancer Center Department of Medical Oncology, and professor of medicine and radiation oncology, New York Medical College. He is also Board Certified in Internal Medicine and the subspecialty Board of Medical Oncology (See curriculum vitae attached . . . .) Dr. Wiernik will use, as a basis for his opinions:

"1. Medical records and reports contained in the entire St. Francis [Hospital and] Medical Center record of Howard Wexler;

"2. The office notes and medical records of Dr. DeMaio, Dr. Tortora and Dr. DaSilva;

"3. The office notes and medical records of Lynn Davis, M.D.;

"4. The deposition transcripts of Howard Wexler, and reports and exhibits marked therein.

"5. The deposition transcripts of testimony to be given by Dr. DeMaio, Dr. Tortora, Dr. DaSilva and Dr. Davis, and reports and exhibits marked therein." (Emphasis added.)

but failed to link them in any way to a particular opinion. In addition, the plaintiffs failed to provide, as ordered, a list of cases in which the expert had offered testimony since January, 1999. After our review of the record, we cannot conclude that evidence is lacking to support the court's finding that the plaintiffs' disclosure failed to comply with its June 12, 2003 order.

C

In light of our conclusions that the order was reasonably clear and that the court reasonably concluded that compliance with the order was inadequate, we must next consider whether the sanction imposed was proportional to the violation. See *Millbrook Owners Assn., Inc.* v. *Hamilton Standard,* supra, 257 Conn. 18. We review the court's action for abuse of discretion. See id. In so doing, the determinative question is whether the court reasonably could have concluded as it did. See id., 15.

Rather than preclude the plaintiffs' expert because of inadequate disclosure, the court decided to permit "what amount[ed] to thirteenth hour compliance." In doing so, it sanctioned the plaintiffs by issuing a new, more stringent order. In deciding on the parameters of the new order, the court considered the practicality of completing the entire disclosure process prior to trial, the prejudice that the defendants would suffer were it to permit such a late expert disclosure by the plaintiffs, the fact that the case had been pending since the spring of 1998 and the fact that no continuance had been sought. In light of those considerations, the court ordered the plaintiffs to submit a written report by their expert that met what the court regarded as the minimum requirements of Practice Book § 13-4 (4), copies of all existing transcripts of expert testimony by the expert and a list of billings from previous cases in which the expert served as a witness. Given that the court could

have precluded the plaintiffs' expert under Practice Book § 13-4 (4) or its own inherent powers to compel observance of its rules; see *Millbrook Owners Assn., Inc.* v. *Hamilton Standard,* supra, 257 Conn. 12–13; the court was well within its discretion to issue a new, albeit stringent, discovery order.

II

The plaintiffs claim that the court improperly precluded their expert's testimony. The court precluded the expert testimony following the plaintiffs' admitted failure to comply with the court's third discovery order, issued at the September 4, 2003 hearing. In order for a court to impose sanctions for the violation of a discovery order, the order issued must be reasonably clear, "the record must establish that the order was in fact violated [and] the sanction imposed must be proportional to the violation." Id., 17–18.

Whether the order was reasonably clear is a legal question that we review de novo. See id., 17. A review of the record shows the court's order to be detailed and clear. The court directed the plaintiffs to provide the defendants with a written report from their expert by September 10, 2003, thereby complying with the minimum requirements of Practice Book § 13-4 (4), which the court proceeded to define in detail.[6] The

[6] The court defined compliance with Practice Book § 13-4 (4) as requiring the expert to "[identify] specifically what the standard of care was in the pertinent time frame for each of these two doctors, persons of their medical specialty, to identify the particular way or ways, including dates, times, places and actions and inactions, when each of them is claimed to have deviated from the standard of care and the basis in the record that has been shared with this individual for those conclusions. And by that I mean particular entries in the record, particular test results in the record, particular nurses' observations or doctors' observations in the record or any other pertinent facts in the record that are claimed to support the doctors' view that that which occurred in fact constituted a deviation from the standard of care.

"And then if the doctor has a further opinion that such alleged deviation caused a particular injury or result to specify what that result is and what the factual basis is for the doctor's conclusion that the alleged deviation

court also directed the plaintiffs to provide a list of all billings for those cases on which the expert had worked and the transcripts of any testimony given since January, 1999. Furthermore, the expert was to be available for a deposition within two weeks.

Having concluded that the order was reasonably clear, we need not consider whether the plaintiffs complied with the court's September 4, 2003 order because they conceded before the court on September 29, 2003, that their submission on September 25, 2003, did not comply with the September 4, 2003 order.

We next address the question of whether the court's sanction of preclusion was proportional to the violation. See *Millbrook Owners Assn., Inc.* v. *Hamilton Standard,* supra, 257 Conn. 18. We review the court's action for abuse of discretion. See id. Over the course of four years and in the face of three court orders, the plaintiffs had failed to disclose their expert adequately. Trial was scheduled to commence in little more than one week, and no request for a continuance had been filed. The court determined that the defendants could not ade-

proximately caused it. And to the degree that the result is claimed to have features or aspects which consist of medical consequences like pain, bleeding, the need for further intervention or treatment, rehabilitation, nursing care, the expenditure of money, any physical consequence of any resulting limitation on the ability to live and enjoy life or any financial consequences, anything that's claimed to have been proximately caused by—the harm is part of the basis for damages—that, too, is to be specified. And, of course, the basis in the record for that conclusion is to be specified. And if the individual claims to have generic experience with cases of this kind, the basis in experience or learning upon which it is claimed that such sequelae flow from injuries of the kind he identifies is to be given as well."

We were unable to find any support in Connecticut law for the court's assertion that compliance with Practice Book § 13-4 (4) requires the specific and detailed disclosure it ordered. We recognize, as noted in part I C, however, that the court has inherent power to regulate proceedings before it to the extent reasonably necessary to "discharge its judicial responsibilities and to provide for the efficient administration of justice." *Ruggiero* v. *Ruggiero,* 55 Conn. App. 304, 307, 737 A.2d 997 (1999); see also *Millbrook Owners Assn, Inc.* v. *Hamilton Standard,* supra, 257 Conn. 12–13. As such, it was within the power of the court to order a disclosure that went beyond that required under Practice Book § 13-4 (4).

quately prepare for trial within that time frame. On that record, we cannot conclude that the court abused its discretion in precluding the plaintiffs' expert testimony.

The judgment is affirmed.

In this opinion McLACHLAN, J., concurred.

LAVERY, C. J., dissenting. I respectfully disagree with the decision of the majority because I believe that the expert disclosure provided by the plaintiffs, Howard Wexler and Judy Wexler, on June 26, 2003, met the requirements of Practice Book § 13-4 (4). Accordingly, I would hold that the court's order of September 4, 2003, which imposed additional stringent requirements that the plaintiffs were unable to meet and ultimately resulted in the dismissal of their case, was an abuse of discretion.

The September 4, 2003 order resulted primarily from what the court deemed inadequate compliance with Practice Book § 13-4 (4) in the disclosure provided by the plaintiffs on June 26, 2003, in response to the court's June 12, 2003 order. Although the September order was a new one in that it mandated disclosure of further information, namely, transcripts of the named expert's prior testimony, it also served as an articulation of the June order insofar as it elucidated what the court was contemplating when it mandated "a written disclosure fully complying with Practice Book § 13-4 (4) . . . ." Putting aside the question of whether standard disclosure of the detailed information included in the September order would promote desirable litigation policy, the requirements articulated by the court simply have no basis in the plain language of the rule or in the appellate jurisprudence interpreting the rule. Although I do not disagree that a court may order discovery above and beyond that required by our rules of practice, the court's subsequent explanation of what it intended by its June

12, 2003 order leads me to conclude that that order was unclear and, accordingly, the September 4, 2003 order amounted to an unfair surprise.[1] Alternatively, looking to the plain language of the June 12, 2003 order without the benefit of the court's later articulation, I would conclude that the plaintiffs' June 26, 2003 response was compliant and that the September 4, 2003 order was unwarranted.

To begin, our rules of practice require, in relevant part, simply that "any plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion . . . ." Practice Book § 13-4 (4). The plaintiffs' June 26, 2003 disclosure was a reasonably complete response that addressed each of those elements.[2] The requirement of a "detailed, written report" comprised of the myriad specifics on which the court elaborated; see footnote 6 of the majority opinion; is nowhere to be found in the plain text of Practice Book § 13-4 (4).

Moreover, neither has our decisional law established the requirement of highly detailed expert disclosure. Many of the appellate cases involving Practice Book § 13-4 (4) or its predecessor, Practice Book § 220 (D), concern the untimeliness of expert disclosure rather than its content. See, e.g., *Gaudio* v. *Griffin Health Services Corp.*, 249 Conn. 523, 547–48, 733 A.2d 197

---

[1] In that regard, the timing of the September 4, 2003 order, i.e., weeks before trial, also is troubling. Although the motions to preclude were filed on July 3 and 7, 2003, by the defendant physicians John T. DeMaio, John M. DaSilva, Michael J. Tortora and Lynn K. Davis, and contested the adequacy of the plaintiffs' June 26, 2003 disclosure, the hearing on those motions was not held until September 4, 2003, leaving little time for the extensive supplementation then ordered by the court. It is unclear on appeal why two months elapsed before a hearing was held on the motions to preclude.

[2] See footnote 5 of the majority opinion.

(1999); *Pool* v. *Bell*, 209 Conn. 536, 540–41, 551 A.2d 1254 (1989); *Bourquin* v. *B. Braun Melsungen*, 40 Conn. App. 302, 308–309, 670 A.2d 1322, cert. denied, 237 Conn. 909, 675 A.2d 456 (1996); *Pie Plate, Inc.* v. *Texaco, Inc.*, 35 Conn. App. 305, 308–10, 645 A.2d 1044, cert. denied, 231 Conn. 935, 650 A.2d 172 (1994). The few decisions addressing directly the sufficiency of the extent of disclosure have upheld preclusion in circumstances in which the disclosure at issue had substantially less content than that provided by the plaintiffs here.

For example, in *Vitone* v. *Waterbury Hospital*, 88 Conn. App. 347, 869 A.2d 672 (2005), the plaintiff disclosed just her expert's name, that he would testify as to the subject matter of "[c]are and treatment given to [the decedent] by the Defendants," that the substance of his testimony would be "[s]tandards of care which the Defendants failed to maintain" and that the underlying grounds were the "[m]edical records of [the decedent]." Id., 350 n.3. In *Sullivan* v. *Yale-New Haven Hospital, Inc.*, 64 Conn. App. 750, 785 A.2d 588 (2001), the disclosure stated only that the expert "is expected to testify [that] the care and treatment provided to [the decedent] in December, 1990, was not within the accepted standard of care and was a serious departure from then prevailing standards of care." (Internal quotation marks omitted.) Id., 757–58 n.4. In *Menna* v. *Jaiman*, 80 Conn. App. 131, 832 A.2d 1219 (2003), the plaintiff identified two physicians, but indicated merely that they would testify "according to their expertise" on their "diagnosis and treatment of the plaintiff as well as any prognosis for future care and permanent disability." (Internal quotation marks omitted.) Id., 134–35.[3]

---

[3] In *Advanced Financial Services, Inc.* v. *Associated Appraisal Services, Inc.*, 79 Conn. App. 22, 44–45, 830 A.2d 240 (2003), we upheld the court's preclusion of expert testimony where the defendants' disclosure provided somewhat more information than the disclosures in *Vitone*, *Sullivan* and *Menna*. A significant factor in *Advanced Financial Services, Inc.*, however, was the fact that the disclosure also was inaccurate and that the true topic of the experts' testimony was not revealed until the hearing on a motion

In contrast, the disclosure here identified physician Peter H. Wiernik as the expert on the subjects of the standard of care in treating a recurrent infectious process and hairy cell leukemia, the deviations therefrom by the defendant physicians John T. DeMaio, John M. DaSilva, Michael J. Tortora and Lynn K. Davis, and Howard Wexler's resultant condition and the need for a risky splenectomy. The pertinent time frame was identified. Regarding the standard of care, the disclosure posited that the three general surgeon defendants, who practiced together and provided similar treatment to Howard Wexler, should have diagnosed him timely and accurately rather than masking his symptoms with antibiotics. As to the fourth defendant, a hematologist, the plaintiffs' disclosure revealed the theory that on making the diagnosis of hairy cell leukemia, he should have treated Howard Wexler immediately with chemotherapy. According to the disclosure, the aforementioned deviations led to the need for a splenectomy and, further, that performance of the splenectomy was delayed to a point that made it more risky and exposed Howard Wexler to a much higher rate of mortality. The plaintiffs also disclosed fully Wiernik's credentials and that his opinion was grounded in the defendants' office notes, medical records and deposition testimony.[4] See footnote 5 of the majority opinion.

The plaintiffs argue persuasively that the court improperly imported into state court proceedings the more rigorous standard for expert disclosure in federal cases. The current federal rule, in contrast to Practice Book § 13-4 (4), explicitly contemplates disclosure similar to that ordered by the court, in particular, disclosure

---

to preclude. Id., 45. Consequently, "the disclosure actually led the plaintiff astray of what the experts would testify about." Id.

[4] The plaintiffs provided a more specific supplemental disclosure with substantial additional detail on September 25, 2003. Because they concededly were unable to comply with the requirements of the September 4, 2003 order, however, the court did not consider the supplemental disclosure.

of a detailed "written report prepared and signed by the witness . . . contain[ing] a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years." Fed. R. Civ. P. 26 (a) (2) (B).

Section 13-4 (4) in its original form was promulgated in 1986; see *Mulrooney* v. *Wambolt*, 215 Conn. 211, 217–18, 575 A.2d 996 (1990); Practice Book (1978) § 220 (D), as amended June 23, 1986; and borrowed language from the 1970 version of the federal rule that required a party only to "identify each person [it] expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." Fed. R. Civ. P. 26 (b) (4) (A). The federal rule was amended in 1993, deleting that provision and adding Fed. R. Civ. P. 26 (a) (2) (B). When our rule of practice thereafter was amended in 1995 to eliminate specific time deadlines, the general disclosure language was retained. Presumably, if our rules committee had wanted to adopt the newer, more detailed disclosure requirements in use in the federal courts, it would have done so at that time or at some point since. In informing the plaintiffs at the eleventh hour that its prior order requiring compliance with Practice Book § 13-4 (4) really meant compliance akin to the stricter federal rule, the court effectively blindsided them.

The 1993 addition of the federal provision requiring more detailed expert information was "intended to eliminate or reduce the need for deposing experts." J. Koski, "Mandatory Disclosure," 80 A.B.A. J. 85, 86 (February, 1994); see also "Amendments to the Federal Rules of Civil Procedure and Forms, Communication from the Chief Justice of the United States," committee notes, 146 F.R.D. 402, 634 (April 22, 1993); 8 C. Wright, A. Miller & R. Marcus, Federal Practice and Procedure (1994) § 2031.1, p. 443 ("one hope for the disclosure process is that it will obviate, or at least shorten, some expert-witness depositions because the disclosures themselves will provide ample information"). In contrast, our rule of practice, in the context of a medical malpractice action, is intended to "furnish a defendant with details of a plaintiff's medical claim to assist in the preparation of the defendant's case." *Rosenberg* v. *Castaneda*, 38 Conn. App. 628, 632, 662 A.2d 1308 (1995). In Connecticut's courts, it is fully expected that expert witnesses will be deposed.[5] See Practice Book § 13-4 (1) (B). Accordingly, a less complete disclosure typically will suffice, as the basic information provided therein can be more fully developed at the expert's deposition.

In this case, the court in its June 12, 2003 order required that the plaintiffs' expert be available for deposition on specific dates in July, 2003. At the September 4, 2003 hearing, the plaintiffs' counsel confirmed that the expert had been available as directed. Insofar as the court also had ordered that the plaintiffs would bear the costs for any depositions of its experts, any harm that might have flowed from inadequate preparation due to insufficient disclosure presumably would

---

[5] The federal rules also allow for an expert to be deposed, but provide that "the deposition shall not be conducted until after the report [required by subsection (a) (2) (B)] is provided." Fed. R. Civ. P. 26 (b) (4) (A). Our rules do not include that restriction.

have been mitigated via the ordered cost shifting. In other words, if the depositions took longer than expected, it was the plaintiffs who would pay. Nevertheless, the defendants chose to forgo any attempt to depose Wiernik with the information they had received and moved instead to preclude his testimony altogether.

Under the circumstances, I believe the court's stringent September 4, 2003 order, and the dismissal of the case that ultimately flowed therefrom, was an abuse of discretion.

I would reverse the judgment.