## HOWARD WEXLER ET AL. *v.* JOHN T. DEMAIO ET AL.
### (SC 17466)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued May 17—officially released October 3, 2006

*William F. Gallagher*, with whom, on the brief, was *Hugh D. Hughes*, for the appellants (plaintiffs).

*Andrew J. O'Keefe*, with whom, on the brief, was *Joseph M. Busher, Jr.*, for the appellees (named defendant et al.).

*Paul T. Nowosadko*, with whom, on the brief, was *Lorinda S. Coon*, for the appellee (defendant Lynn K. Davis).

*Opinion*

VERTEFEUILLE, J. In this certified appeal,[1] the plaintiffs, Howard Wexler and Judith Wexler,[2] claim that the Appellate Court improperly affirmed the summary judgment rendered by the trial court after that court had precluded the testimony of the plaintiffs' expert witness. Specifically, the plaintiffs claim that the Appellate Court improperly concluded that their June 26, 2003 disclosure (June disclosure) of Peter H. Wiernik as an expert witness failed to comply with Practice Book § 13-4 (4).[3] We agree and, accordingly, we reverse the judgment of the Appellate Court.

[1] We granted the plaintiffs' petition for certification to appeal limited to the following issue: "Did the Appellate Court properly affirm the decision of the trial court precluding the plaintiffs' expert from testifying?" *Wexler* v. *DeMaio*, 274 Conn. 915, 879 A.2d 895 (2005).

[2] Howard Wexler died during the pendency of this appeal, and the administratrix of his estate, Judith Wexler, was named as a substitute plaintiff. Judith Wexler, who originally had filed a loss of consortium claim against the defendants, also represents her own individual interest in this appeal. References herein to the plaintiffs are to Judith Wexler in her individual and administrative capacities.

[3] Practice Book § 13-4 (4) provides: "In addition to and notwithstanding the provisions of subdivisions (1), (2) and (3) of this rule, any plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within a reasonable time prior to trial. Each defendant shall disclose the names of his or her experts in like manner within a reasonable time from the date the plaintiff discloses experts, or, if the plaintiff fails to disclose experts, within a reasonable time prior to trial. If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subdivision, or if an expert witness who is expected to testify is retained or specially employed after a reasonable time prior to trial, such expert shall not testify if, upon motion to preclude such testimony, the judicial authority determines that the late disclosure (A) will cause undue prejudice to the moving party; or (B) will cause undue interference with the orderly progress of trial in the case; or (C) involved bad faith delay of disclosure

The opinion of the Appellate Court sets forth the following relevant procedural history. "By amended complaint filed August 7, 1998, the plaintiffs brought [a medical malpractice] action against the defendant physicians, John T. DeMaio, John M. DaSilva, Michael J. Tortora and Lynn K. Davis,[4] alleging [that they negligently had diagnosed and treated Howard Wexler's recurrent infections and hairy cell leukemia] . . . between November, 1994, and January, 1996. The defendants filed interrogatories and requests for production in the spring of 1998, in which they asked the plaintiffs to identify any expert witness to be called at trial, and to disclose the subject matter, facts and opinions on which the expert was expected to testify, and a summary of the grounds for each opinion. The plaintiffs responded in August, 1998, that the expert disclosure would be 'supplied in accordance with [§ 13-4] . . . .'

"On July 10, 2002, the court issued a scheduling order requiring the plaintiffs to disclose their experts by November 30, 2002. The plaintiffs disclosed no expert. On May 5, 2003, Davis filed a motion for summary judgment, maintaining that because the plaintiffs had failed

by the disclosing party. Once the substance of any opinion or opinions of an expert witness who is expected to testify at trial becomes available to the party expecting to call that expert witness, disclosure of expert witness information shall be made in a timely fashion in response to interrogatory requests pursuant to subdivision (1) (A) of this rule, and shall be supplemented as required pursuant to Section 13-15. Any expert witness disclosed pursuant to this rule within six months of the trial date shall be made available for the taking of that expert's deposition within thirty days of the date of such disclosure. In response to any such expert disclosure, any other party may disclose the same categories of information with respect to expert witnesses previously disclosed or a new expert on the same categories of information who are expected to testify at trial on the subject for that party. Any such expert or experts shall similarly be made available for deposition within thirty days of their disclosure. Nothing contained in this rule shall preclude an agreement between the parties on disclosure dates which are part of a joint trial management order."

[4] DeMaio, DaSilva and Tortora share a medical practice and are represented jointly in this appeal; Davis is represented separately.

to disclose an expert witness to testify as to the standard of care, they could not meet their burden of proof in the case. On May 19, 2003, the plaintiffs filed a motion for extension of time until July 2, 2003, in which to disclose their expert witness, alleging that the expert retained prior to the commencement of the action was retired and would not testify. At a June 9, 2003 hearing on the motion, the court ordered the plaintiffs to provide an affidavit no later than June 11, 2003, by Thomas J. Airone, the attorney responsible for the case, stating when the expert was hired, when counsel discovered that the expert would be unable to testify and whether another expert was immediately available. An affidavit was filed on June 10, 2003, by attorney William F. Gallagher, [a member of the same law firm with which Airone was associated; see footnote 6 of this opinion] in which he stated that the expert had refused to appear in another case handled by his law firm in the spring of 2002, but that it was not until February or March, 2003, that Airone learned that the expert was unavailable. Gallagher stated in the affidavit that he was uncertain whether another expert was available.

"The court issued a memorandum of decision on June 12, 2003, granting the plaintiffs' motion to extend time until noon on June 26, 2003. The court found that although the failure to disclose an expert resulted from the negligence of the plaintiffs' counsel, the defense would not be prejudiced by the late disclosure, provided certain conditions were met. The disclosure was to comply fully with § 13-4 (4) and to include the expert's curriculum vitae, a list of all materials and information viewed or considered by the expert and a copy of all such materials not yet disclosed, as well as a list of all cases in which the expert had testified since January, 1999.[5] The plaintiffs were also ordered to make the

---

[5] Specifically, the trial court's written order provided in relevant part: "At or before 12:00 noon on Thursday, June 26, 2003, the plaintiffs must file and serve, by fax or in-hand delivery, a written disclosure fully complying

expert available for a deposition on specific dates during the first two weeks of July and to bear all costs associated with the deposition.

"The plaintiffs filed a disclosure of physician Peter H. Wiernik on the morning of June 26, 2003, which stated that he was expected to testify as to the standards of care that the defendants should have observed in treating Howard Wexler, the deviations from those standards of care and the causal relationship between the two. It further stated that Wiernik was expected to testify that DeMaio, DaSilva and Tortora missed and delayed the effective diagnosis of Howard Wexler's condition, that Davis failed to provide proper treatment once the condition was discovered, and that those failings subjected Howard Wexler to an unnecessary and more risky medical procedure, contributing to his current condition. [Wiernik's] opinions were based on his training, education, experience and background, on hospital records, office notes and medical records of the defendants, and on the transcripts of the depositions of Howard Wexler and the defendants. Attached to the disclosure was [Wiernik's] curriculum vitae.

"On July 3, 2003, Davis filed a motion to preclude Wiernik's testimony, maintaining that the plaintiffs' disclosure was vague, lacked sufficient detail and failed to comply with the court's order and § 13-4. Davis claimed,

with . . . § 13-4 (4) as to each expert [witness] whom they intend to call at trial in support of their claims against any defendant on the issues of standard of care, deviation from the standard of care and/or resulting causation of injuries or losses. The plaintiffs shall attach to and make a part of each such written disclosure the following materials: (1) a current curriculum vitae or other document setting forth the qualifications of the expert witness; (2) a list of all materials or other information reviewed or considered by the expert witness in forming his or her opinions in this case, and true copies of all such materials except to the extent that they have already been produced by any party in discovery; and (3) a list of all cases in which the witness has testified as an expert witness at trial or in a deposition since January 1, 1999."

inter alia, that the disclosure was deficient in that it did not state [Wiernik's] opinion as to the standard of care, how that standard had been breached, and how the breach affected Howard Wexler's life and health. In addition, the plaintiffs had provided no list of cases in which [Wiernik] had testified. The plaintiffs objected to the motion on the grounds that the disclosure complied with the requirements of § 13-4 (4) and that [Wiernik] had provided a short list of cases in which he had served as an expert witness, none of which had resulted in testimony. Davis responded that he had found at least two cases in which [Wiernik] had testified as an expert witness during the relevant period. The other defendants also filed a motion to preclude.

"A hearing on Davis' motion to preclude was held on September 4, 2003. The plaintiffs, now represented by Gallagher,[6] proffered a July 7, 2003 e-mail from [Wiernik] that listed three cases in which he had been deposed. The plaintiffs claimed that prior to the disclosure, Wiernik had stated that he had no recollection of any testimony offered since January, 1999, and that it was his understanding that the defendants had been provided a copy of the e-mail. The defendants denied having received the e-mail. The court refused to accept the plaintiffs' claim that they had provided the defendants with all the information they possessed regarding prior testimony by Wiernik without testimony from Airone on the matter. The plaintiffs also stated that [Wiernik] had been made available for a deposition on the dates required by the court's order. The court found that the disclosure was inadequate because, in addition to the absence of the ordered list of testimony, no detail

---

[6] "The plaintiffs were represented at all times by the Gallagher Law Firm. Airone was the attorney primarily responsible for the case until he left the firm in August, 2003, when Gallagher assumed responsibility for the case." *Wexler* v. *DeMaio*, 88 Conn. App. 818, 823 n.2, 871 A.2d 1071 (2005).

was provided with respect to the standard of care and the deviation therefrom.[7]

"Nevertheless, the court gave the plaintiffs a third opportunity to comply with the expert disclosure requirements. The court ordered the plaintiffs to provide the defendants with a written report from [Wiernik] by September 10, 2003, complying with the minimum requirements of § 13-4 (4), which the court proceeded to define in detail. The court also directed the plaintiffs to provide a list of all billings for those cases on which [Wiernik] had worked and transcripts of any testimony he had given since January, 1999. It further ordered that Wiernik be available for deposition within two weeks. The plaintiffs stated that it would be difficult to comply within the time frame ordered, that supplying the transcripts would be impossible and that although that kind of disclosure was standard practice in the federal courts, it was not provided for by § 13-4. The court responded that it had ordered transcripts to be supplied several months ago and that it was 'giving [the plaintiffs] the opportunity to have what amounts to a thirteenth hour compliance.'

"The plaintiffs filed a supplemental disclosure of their expert on September 25, 2003, which provided more detail as to [Wiernik's] expected testimony, but no written report, billing list or transcripts of prior testimony.

---

[7] Specifically, the trial court stated: "It's entirely clear to me that this disclosure is inadequate. And forgetting for the moment the [curriculum vitae] issue and the deposition transcript issue, which I think is important because it was ordered. But that's not really the centerpiece of my concern. The centerpiece of my concern, honestly, has to do with the extraordinarily general nature of this disclosure. I mean, there might as well have been a reference to subparagraphs of a pleading. Because there's really nothing more that's alleged here. There are no details provided with respect to the nature of the deviation from the standard of care, the grounds upon which it's thought to be a deviation from the standard of care. And there's no tying of this to any particular medical specialty. You know, it's just devoid of the kind of content that I believe the rule clearly requires."

At a hearing on September 29, 2003, the plaintiffs admitted that they had not complied with the court's order of September 4, 2003. The defendants renewed their motions to preclude and, based thereon, their motions for summary judgment.[8] The plaintiffs acknowledged that were the court to grant the motions to preclude, they could not meet their burden of proof in the case and that summary judgment in favor of the defendants would necessarily follow. The court noted that without the plaintiffs' expert disclosure, the defendants could not adequately prepare for trial. The court thereafter granted the defendants' motions to preclude and their motions for summary judgment." *Wexler* v. *DeMaio*, 88 Conn. App. 818, 820–24, 871 A.2d 1071 (2005).

On appeal to the Appellate Court, the plaintiffs claimed that: "(1) the court's articulation on September 4, 2003, of its June 12, 2003 order was not reasonably clear and that their disclosure on June 26, 2003, complied with the reasonable meaning of the court's June 12, 2003 order, and (2) the court abused its discretion by requiring that the plaintiffs' disclosure of their expert witness meet the federal standard for disclosure of expert witnesses." Id., 824–25. In a divided opinion, the Appellate Court affirmed the judgment of the trial court. First, the Appellate Court concluded that the trial court's discovery order on September 4, 2003 (September order) was not an articulation of the June 12, 2003 discovery order (June order) because the September order had required the plaintiffs to produce additional materials beyond those previously ordered in June.[9] Id.,

---

[8] "DeMaio, DaSilva and Tortora filed a motion for summary judgment on September 15, 2003." *Wexler* v. *DeMaio*, 88 Conn. App. 818, 824 n.3, 871 A.2d 1071 (2005). Davis originally had filed a motion for summary judgment on May 2, 2003, and subsequently supplemented that motion on September 11, 2003.

[9] Specifically, the Appellate Court concluded that the September order was a new and more stringent order because it had required the plaintiffs "to supply a written report by [Wiernik] in compliance with § 13-4 (4), transcripts of testimony given by [Wiernik] and a list of billings made by [him] since January, 1999 . . . ." *Wexler* v. *DeMaio*, supra, 88 Conn. App. 826.

826. Second, the Appellate Court concluded that the trial court properly had sanctioned the plaintiffs for a violation of the June order. Id., 831–32. Specifically, the Appellate Court concluded that the June order was reasonably clear, and that it plainly required the plaintiffs to disclose "as to each defendant individually . . . the standard of care, the action or inaction of the defendant who breached that standard, the specific harm that flowed from the breach and the basis for each of [Wiernik's] conclusions." Id., 828. The Appellate Court further concluded that the trial court properly had found that the plaintiffs had violated the June order because their disclosure had failed to: (1) distinguish between the several defendants; (2) disclose a standard of care; (3) allege any deviations from the standard of care with specificity; (4) state the nature of the harm allegedly caused by the defendants' actions or inactions; (5) link the sources relied on by Wiernik in forming his opinions to his particular opinions; and (6) provide a list of cases in which Wiernik had testified. Id., 830–31. Moreover, the Appellate Court concluded that the sanction imposed by the trial court, namely, the issuance of the September order, was proportional to the violation. Id., 831–32. Finally, the Appellate Court concluded that the September order was reasonably clear, that the plaintiffs' disclosure failed to comply with that order and that the sanction imposed by the trial court, namely, preclusion of Wiernik's testimony, was proportional to the violation. Id., 832–34.

In a dissenting opinion, Chief Judge Lavery concluded that the trial court's September order "served as an articulation of the June order insofar as it elucidated what the court was contemplating when it mandated 'a written disclosure fully complying with . . . § 13-4 (4) . . . .' Putting aside the question of whether standard disclosure of the detailed information included in the September order would promote desirable litigation

policy, the requirements articulated by the court simply have no basis in the plain language of the rule or in the appellate jurisprudence interpreting the rule." Id., 834. "Alternatively, looking to the plain language of the June . . . order without the benefit of the court's later articulation," Chief Judge Lavery concluded that "the plaintiffs' June 26, 2003 response was compliant and . . . the September . . . order was unwarranted."[10] Id., 835.

In this certified appeal, the plaintiffs renew the claims that they raised in the Appellate Court. Before addressing the substance of these claims, we clarify what is not at issue in the present case. The plaintiffs do not dispute that the trial court had the authority to order them to disclose the expected testimony of Wiernik, and the basis for that testimony, with more specificity and detail than § 13-4 (4) requires. See id., 832–33 n.6 (trial court had power to order plaintiffs to produce detailed written report of expert witness' expected testimony because court "has inherent power to regulate proceedings before it to the extent reason-

---

[10] Specifically, Chief Judge Lavery concluded in his dissent that the plaintiffs' disclosure was compliant because it "identified [Wiernik] as the expert on the subjects of the standard of care in treating a recurrent infectious process and hairy cell leukemia, the deviations therefrom by . . . [DeMaio], [DaSilva], [Tortora] and [Davis], and Howard Wexler's resultant condition and the need for a risky splenectomy. The pertinent time frame was identified. Regarding the standard of care, the disclosure posited that the three general surgeon defendants [DeMaio, DaSilva and Tortora], who practiced together and provided similar treatment to Howard Wexler, should have diagnosed him timely and accurately rather than masking his symptoms with antibiotics. As to the fourth defendant [Davis], a hematologist, the plaintiffs' disclosure revealed the theory that on making the diagnosis of hairy cell leukemia, he should have treated Howard Wexler immediately with chemotherapy. According to the disclosure, the aforementioned deviations led to the need for a splenectomy and, further, that performance of the splenectomy was delayed to a point that made it more risky and exposed Howard Wexler to a much higher rate of mortality. The plaintiffs also disclosed fully Wiernik's credentials and that his opinion was grounded in the defendants' office notes, medical records and deposition testimony." *Wexler* v. *DeMaio*, supra, 88 Conn. App. 837.

ably necessary to discharge its judicial responsibilities and to provide for the efficient administration of justice" [internal quotation marks omitted]). Rather, the plaintiffs contend that the trial court improperly concluded that the plaintiffs' June disclosure lacked sufficient detail to satisfy § 13-4 (4) and, consequently, failed to comply with the court's June order. After reviewing the plain language of § 13-4 (4), prior case law concerning the scope of disclosure required by that provision, the purpose and history of § 13-4 (4) and the record in the present case, we conclude that the plaintiffs' June disclosure complied, albeit minimally, with the requirements of § 13-4 (4). Accordingly, we reverse the judgment of the Appellate Court.

As a preliminary matter, we set forth the appropriate standard of review. "In order for a trial court's order of sanctions for violation of a discovery order to withstand scrutiny, three requirements must be met.

"First, the order to be complied with must be reasonably clear. In this connection, however, we also state that even an order that does not meet this standard may form the basis of a sanction if the record establishes that, notwithstanding the lack of such clarity, the party sanctioned in fact understood the trial court's intended meaning. This requirement poses a legal question that we will review de novo.

"Second, the record must establish that the order was in fact violated. This requirement poses a question of fact that we will review using a clearly erroneous standard of review.

"Third, the sanction imposed must be proportional to the violation. This requirement poses a question of the discretion of the trial court that we will review for abuse of that discretion." *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 17–18, 776 A.2d 1115 (2001).

We begin our analysis with the issue of the clarity of the trial court's June order, which required the plaintiffs, inter alia, to file "[a]t or before 12:00 noon on Thursday, June 26, 2003 . . . a written disclosure fully complying with . . . § 13-4 (4) as to each expert [witness] whom they intend to call at trial in support of their claims against any defendant on the issues of standard of care, deviation from the standard of care and/or resulting causation of injuries or losses." We conclude that this order is reasonably clear and that it plainly required the plaintiffs to file, in accordance with § 13-4 (4), a written disclosure with respect to each expert witness they expected to call to testify at trial.

Because the trial court ordered the plaintiffs to disclose their expert witnesses in accordance with § 13-4 (4), we next address whether the disclosure requirements set forth therein are reasonably clear. Section 13-4 (4) provides in relevant part that "any plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within a reasonable time prior to trial. . . ." See footnote 3 of this opinion. We conclude that this provision is reasonably clear and plainly requires a plaintiff to disclose: (1) the name of the expert witness; (2) the subject matter on which the expert is expected to testify; (3) the substance of the facts and opinions to which the expert is expected to testify; and (4) a summary of the grounds for each opinion. See *Menna* v. *Jaiman*, 80 Conn. App. 131, 135, 832 A.2d 1219 (2003) ("mandates of . . . § 13-4 are 'reasonably clear' and satisfy the first prong of the test under *Millbrook Owners Assn., Inc.*"); *Advanced Financial Services, Inc.* v. *Associated Appraisal Services, Inc.*, 79 Conn. App. 22, 46, 830 A.2d 240 (2003)

("the order with which the defendants were required to comply was reasonably clear, and the defendants knew that in complying with the order they had to comply with . . . § 13-4 [4]"); *Sullivan* v. *Yale-New Haven Hospital, Inc.*, 64 Conn. App. 750, 759, 785 A.2d 588 (2001) ("We conclude that the court's discovery order satisfied the first prong of the *Millbrook [Owners Assn., Inc.]* test in that it was 'reasonably clear.' The order merely required the substitute plaintiff to comply with [§ 13-4].").

We next consider whether the trial court properly concluded that the plaintiffs had violated the June order. Ordinarily, the question of whether a trial court's discovery order was in fact violated presents this court with "a question of fact that we will review using a clearly erroneous standard of review." *Millbrook Owners Assn., Inc.* v. *Hamilton Standard,* supra, 257 Conn. 17–18. In the present case, however, the trial court found that the plaintiffs had violated the June order solely because the plaintiffs' disclosure lacked the specificity and detail required by § 13-4 (4).[11] See footnote 7 of this opinion. Because the propriety of that finding necessarily depends on the propriety of the trial court's legal conclusion concerning the breadth of disclosure required by § 13-4 (4), our review is plenary. See *State* v. *Zaporta,* 237 Conn. 58, 64 n.5, 676 A.2d 814 (1996) ("the proper construction of a Practice Book section

---

[11] We recognize that the trial court also appears to have found that the plaintiffs had failed to submit a list of cases in which Wiernik had testified since January, 1999; see footnote 7 of this opinion; and that this finding of fact can be reversed only for clear error under the test set forth in *Millbrook Owners Assn., Inc.* v. *Hamilton Standard,* supra, 257 Conn. 17–18. We need not address the propriety of this factual finding, however, because the record reflects that although the trial court considered the plaintiffs' failure to submit the list of cases to be important, it was not the "centerpiece of [the court's] concern." Indeed, the court stated that the "centerpiece of [its] concern," and, thus, the basis for its finding that the plaintiffs' had violated the June order, was "the extraordinarily general nature of the disclosure" and its failure to comply with the requirements of § 13-4 (4).

involves a question of law, [over which] our review . . . is plenary").

To determine whether the plaintiffs' June disclosure is sufficiently detailed to satisfy § 13-4 (4), we turn to the content of that disclosure. The June disclosure provides in relevant part: "B. Subject Matter of Testimony: The plaintiff[s] [expect] that [Wiernik] will testify as to the standard of care [Davis] should have observed in attempting to treat the recurrent infectious process and [h]airy [c]ell leukemia of Howard Wexler on or about October 10, 1995. [Wiernik] is also expected to testify as to the deviations from the identified standards of care by [Davis], and as to the causal relationship between these deviations and the resultant need for [the] splenectomy suffered by Howard Wexler.

"[Wiernik] is further expected to testify as to the standard of care . . . [DeMaio, Tortora and DaSilva] should have observed in attempting to treat the recurrent infectious process and [h]airy [c]ell leukemia of Howard Wexler commencing on or about July 8, 1995. [Wiernik] is also expected to testify as to the deviations from the identified standards of care by . . . [DeMaio, Tortora and DaSilva], and as to the causal relationship between these deviations and the resultant need for [the] splenectomy suffered by Howard Wexler.

"C. Substance of Facts and Opinions to Which the Expert is Expected to Testify: [Wiernik] is expected to testify that all the defendants missed and delayed the effective diagnosis of [Howard] Wexler's condition. In addition, [Wiernik] is expected to testify that [Davis] should have immediately treated [Howard] Wexler with chemotherapy when the first diagnosis of [h]airy [c]ell leukemia was made, and if [Howard] Wexler had been effectively treated with chemotherapy, to a reasonable degree of medical certainty, he would not have required the resultant splenectomy. These deviations from the

standard of care were substantial factors in contributing to [Howard] Wexler's condition.

"Further, [Wiernik] is expected to testify that if . . . [DeMaio, Tortora and DaSilva] had not missed and delayed the diagnosis, by continuing to mask the symptoms with antibiotics, to a reasonable degree of medical certainty, [Howard] Wexler would not have needed a splenectomy. Further, because . . . [DeMaio, Tortora and DaSilva] missed and delayed the diagnosis, the performance of the splenectomy on January 23, 1996 was much more risky, and subjected [Howard] Wexler to a much higher potential rate of mortality. These deviations from the standard of care were substantial factors in contributing to [Howard] Wexler's condition.

"D. Summary of Grounds for Each Opinion: [Wiernik's] opinions are based upon his training, education, experience and background as an oncologist and internal medicine specialist, director of the Comprehensive Cancer Center, a member of the [Our Lady of Mercy] Cancer Center Department of Medical Oncology, and professor of medicine and radiation oncology, New York Medical College. He is also [b]oard [c]ertified in [i]nternal [m]edicine and the subspecialty [b]oard of [m]edical [o]ncology . . . . [Wiernik] will use, as a basis for his opinions:

"1. Medical records and reports contained in the entire [Saint] Francis [Hospital and] Medical Center record of Howard Wexler;

"2. The office notes and medical records of [DeMaio, Tortora and DaSilva];

"3. The office notes and medical records of [Davis];

"4. The deposition transcripts of Howard Wexler, and reports and exhibits marked therein.

"5. The deposition transcripts of testimony to be given by [DeMaio, Tortora, DaSilva and Davis], and reports and exhibits marked therein."

Although the plaintiffs' disclosure is not a model of clarity and detail, we conclude that it is sufficient to satisfy § 13-4 (4). First, the disclosure adequately describes the subject matter of Wiernik's expected testimony, namely, the essential elements of the plaintiffs' medical malpractice claim, i.e., the standard of care, the defendants' deviation therefrom and a causal connection between the alleged deviation and the harm suffered by Howard Wexler. Second, although the disclosure does not delineate explicitly and individually Wiernik's expected testimony with respect to each of these essential elements, we conclude that it adequately sets forth the *substance* of Wiernik's expected testimony concerning each element. Specifically, with respect to Davis, a hematologist, it is apparent from the face of the disclosure that Wiernik was expected to testify that the applicable standard of care required Davis to administer chemotherapy immediately after Howard Wexler first had been diagnosed with hairy cell leukemia, and that Davis deviated from the standard of care by failing to do so. With respect to DeMaio, Tortora and DaSilva, all general surgeons, it is apparent from the face of the disclosure that Wiernik was expected to testify that the applicable standard of care required DeMaio, Tortora and DaSilva promptly to diagnose the recurrent infectious process and hairy cell leukemia of Howard Wexler, and to refrain from administering antibiotics that would mask the symptoms of these conditions and, further, that, DeMaio, Tortora and DaSilva deviated from the standard of care by failing to do so. Moreover, with respect to causation, it is apparent from the face of the disclosure that Wiernik was expected to testify that the defendants' deviations from the standard of care proximately caused Howard

Wexler to undergo a risky and otherwise unnecessary splenectomy.[12] Finally, the disclosure provides a detailed list of the documents and materials on which Wiernik relied to form his opinions and, as such, adequately identifies the grounds for each opinion. Accordingly, we conclude that the plaintiffs' June disclosure, when read in its entirety, is sufficiently detailed to comply with § 13-4 (4).

The Appellate Court concluded, however, that the plaintiffs' disclosure failed to comply with § 13-4 (4) because it did not distinguish between DeMaio, Tortora and DaSilva. *Wexler* v. *DeMaio*, supra, 88 Conn. App. 830–31. Although we encourage plaintiffs to describe separately an expert witness' proposed testimony concerning each defendant, we cannot conclude that the plaintiffs' failure to do so violates § 13-4 (4) under the present circumstances. As an initial matter, we note that "§ 13-4 (4) does not address explicitly the need to distinguish among defendants against whom expert testimony will be offered." *Vitone* v. *Waterbury Hospital*, 88 Conn. App. 347, 355, 869 A.2d 672 (2005). As we previously have explained, however, it does require a plaintiff to disclose the "substance of the facts and opinions to which the expert is expected to testify . . . ." Practice Book § 13-4 (4). It is only logical to conclude that the substance of an expert witness' opinions, and the facts on which he or she relies to form those opinions, may differ significantly with respect to each defendant in a multiparty action. For example,

---

[12] We further note that the June disclosure identifies the time frame during which these events allegedly occurred. Specifically, the disclosure reveals that Wiernik was expected to testify as to the treatment that Davis provided to Howard Wexler commencing "on or about October 10, 1995," and the treatment that DeMaio, Tortora and DaSilva provided to Howard Wexler commencing "on or about July 8, 1995." The disclosure further reveals that Wiernik was expected to testify that these deviations from the standard of care proximately caused Howard Wexler to undergo a splenectomy "on January 23, 1996 . . . ."

the standard of care applicable to a hematologist in connection with the diagnosis and treatment of hairy cell leukemia may differ significantly from the standard of care applicable to a general surgeon and, in turn, the standard of care applicable to both medical specialties may differ significantly depending on the time period during which treatment was rendered. In the present case, however, the record reflects that DeMaio, Tortora and DaSilva all are general surgeons who work in the same medical practice, and that each provided the same or similar medical treatment to Howard Wexler for the same or similar medical condition during the same limited time period.[13] In light of this unique set of facts, we cannot conclude that the substance of Wiernik's expert opinions, and the sources on which he relied to form his opinions, would differ significantly with respect to these three defendants. Accordingly, we conclude that the plaintiffs' failure to distinguish between DeMaio, Tortora and DaSilva does not violate § 13-4 (4).

[13] The defendants claim that reference to the facts contained in the record is improper when assessing the adequacy of a § 13-4 (4) disclosure. We disagree. The purpose of § 13-4 (4) is "to furnish a defendant with details of a plaintiff's medical [malpractice] claim to assist in the preparation of the defendant's case. . . . The rules of discovery are designed to make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." (Citation omitted; internal quotation marks omitted.) *Fahey* v. *Safeco Ins. Co. of America*, 49 Conn. App. 306, 321, 714 A.2d 686 (1998), quoting *United States* v. *Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S. Ct. 983, 2 L. Ed. 2d 1077 (1958). In light of the purpose of § 13-4 (4), and in light of this court's reluctance to apply the law in "a hypertechnical manner so as to elevate form over substance"; *Lostritto* v. *Community Action Agency of New Haven, Inc.*, 269 Conn. 10, 34, 848 A.2d 418 (2004); we decline to conclude that a plaintiff's disclosure is inadequate because it fails to elucidate certain facts that are well-known to the defendant. Accordingly, in determining whether the facts contained in a § 13-4 (4) disclosure are sufficiently detailed to inform a defendant of the factual bases for an expert witness' opinion, we conclude that a reviewing court should consider the entirety of the record on the date that the disclosure was filed, including the factual allegations contained in the plaintiff's complaint and in any discovery materials previously disclosed to the defendant.

The Appellate Court further concluded that the plaintiffs' disclosure failed to comply § 13-4 (4) because it "failed to link [the documents on which Wiernik relied to form his opinions] in any way to any particular opinion." *Wexler* v. *DeMaio*, supra, 88 Conn. App. 830–31. We encourage all parties to explain the rationale and support for each of their expert witness' opinions individually and in as much detail as possible, but, nonetheless, we cannot conclude that such specificity is required by § 13-4 (4). Although § 13-4 (4) requires a plaintiff to disclose "a summary of the grounds for *each* opinion"; (emphasis added) Practice Book § 13-4 (4); it does not require the summary, or the particular documents upon which the expert witness relied, to be linked explicitly to each individual opinion. We conclude that it is sufficient under the plain language of § 13-4 (4) to provide a separate and detailed list of materials on which the expert witness relied to form his opinions. In the present case, because the plaintiffs' disclosure contained such a list, we conclude that it complied with § 13-4 (4).

Our review of the case law addressing the breadth of disclosure required by § 13-4 (4), as well as our research into the purpose and history of that provision, provides further support for our conclusion that the plaintiffs' disclosure was adequate under the present circumstances. The Appellate Court previously has concluded that a disclosure fails to comply with § 13-4 (4) only when the disclosure fails to apprise the defendant of the basic details of the plaintiff's claim. See, e.g., *Vitone* v. *Waterbury Hospital*, supra, 88 Conn. App. 350 n.3 (upholding preclusion of expert testimony when disclosure had stated that expert was expected to testify as to "[s]tandards of care which the [d]efendants failed to maintain" [internal quotation marks omitted]); *Menna* v. *Jaiman*, supra, 80 Conn. App. 134–35 (upholding preclusion of expert testimony when disclosure had

stated that experts were expected to testify "according to their expertise on their diagnosis and treatment of the plaintiff as well as any prognosis for future care and permanent disability" [internal quotation marks omitted]); *Sullivan* v. *Yale-New Haven Hospital, Inc.*, supra, 64 Conn. App. 757–58 n.4 (upholding preclusion of expert testimony when disclosure had stated that expert was expected to testify that "the care and treatment provided to [the plaintiff] . . . was not within the accepted standard of care and was a serious departure from then prevailing standards of care" [internal quotation marks omitted]); see also *Catalano* v. *Falco*, 74 Conn. App. 86, 89–90, 812 A.2d 63 (2002) (upholding admission of expert testimony when disclosure had stated that expert was expected to testify "in accordance with his treatment notes and evaluation and consultation reports").[14]

The prior judicial construction of § 13-4 (4) is consistent with the purpose of that provision, which is to assist the defendant in the preparation of his case, and to eliminate unfair surprise by furnishing the defendant with the essential elements of a plaintiff's claim. See *Rosenberg* v. *Castaneda*, 38 Conn. App. 628, 632, 662 A.2d 1308 (1995) (§ 13-4 [4] is "intended to furnish a defendant with details of a plaintiff's medical claim to assist in the preparation of the defendant's case"); cf. *United States* v. *Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S. Ct. 983, 2 L. Ed. 2d 1077 (1958) (rules of discovery are designed to "make a trial less a game of

---

[14] "In *Advanced Financial Services, Inc.* v. *Associated Appraisal Services, Inc.*, [supra, 79 Conn. App. 44–45], [the Appellate Court] upheld the [trial] court's preclusion of expert testimony where the defendants' disclosure provided somewhat more information than the disclosures in *Vitone, Sullivan* and *Menna*. A significant factor in *Advanced Financial Services, Inc.*, however, was the fact that the disclosure also was inaccurate and that the true topic of the experts' testimony was not revealed until the hearing on a motion to preclude. Id., 45. Consequently, 'the disclosure actually led the plaintiff astray of what the experts would testify about.' Id." *Wexler* v. *DeMaio*, supra, 88 Conn. App. 836–37 n.3 (*Lavery, C. J.*, dissenting).

blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent"). Indeed, the text of § 13-4 (4) was modeled on the interrogatory requirements of Practice Book § 13-4 (1) (A),[15] which was not intended to elicit "an overly detailed exposition of the expert's opinion."[16] R. Ciulla &

---

[15] Practice Book § 13-4 (1) (A) provides: "A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion."

[16] Practice Book § 13-4 (1) (A), in turn, was modeled on then rule 26 (b) (4) (A) (i) of the Federal Rules of Civil Procedure, which, until 1993, provided that "[a] party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." Although there was no clear consensus in the federal courts concerning the amount of detail necessary for a disclosure to satisfy former rule 26 (b) (4) (A) (i), the courts generally applied a " 'notice' standard that relie[d] primarily on two factors: the degree of prejudicial surprise suffered by the discovering party and the discovering party's ability to cure any such prejudice." D. Day, Discovery Standards for the Testimonial Expert under Federal Rule of Civil Procedure 26 (b) (4): A Twentieth Anniversary Assessment, 133 F.R.D. 209, 220 (1990); see *Weiss* v. *Chrysler Motors Corp.*, 515 F.2d 449, 454 (2d Cir. 1975) (adequacy of response depends on whether opposing party received fair notice of theory of liability to which expert was expected to testify); *Workman* v. *Chinchinian*, 807 F. Sup. 634, 646 (E.D. Wash. 1992) ("a response is adequate if it provides sufficient notice of the theories under which the answering party plans to proceed"); *Mann* v. *Newport Tankers Corp.*, 96 F.R.D. 31, 33 (S.D.N.Y. 1982) (response was inadequate because expert's theory of liability must be explained fully if it is to be "seriously pressed").

We note that, in April, 1993, rule 26 of the Federal Rules of Civil Procedure was amended, effective in December of that year, to require a plaintiff to provide a detailed "written report prepared and signed by the witness." See Federal Rule of Civil Procedure 26 (a) (2) (B) ("Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and

R. Allen, "Comments on New Practice Book Revisions," 4 Conn. L. Trib., June 19, 1978, p. 3 (explaining amendments to rules of practice).

In the present case, although the plaintiffs' June disclosure was not as precise and detailed as it could have been, we nevertheless conclude that it complied with the minimal requirements of § 13-4 (4) because it adequately disclosed the name of the plaintiffs' expert witness, the subject matter on which he was expected to testify, the substance of the facts and opinions to which he was expected to testify and a summary of the grounds of each opinion.[17]

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court, and to remand the case to the trial court for further proceedings according to law.

In this opinion the other justices concurred.

testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years."). Our rules of practice, however, have not been amended to impose this more onerous standard of disclosure.

[17] In light of our conclusion, we need not decide whether the September order was an articulation of the June order, or a new and more stringent order issued as a sanction for the plaintiffs' violation of the June order. Regardless, because the plaintiffs' disclosure complied with the reasonable meaning of the June order, the September order never should have issued.