******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ELAINE VITALI *v.* SOUTHERN NEW ENGLAND EAR,
NOSE, THROAT AND FACIAL PLASTIC SURGERY
GROUP, LLP, ET AL.
(AC 35435)

Gruendel, Keller and Pellegrino, Js.

*Argued September 11—officially released November 25, 2014*

(Appeal from Superior Court, judicial district of New
Haven, Lager, J.)

*Carey B. Reilly*, with whom, on the brief, were *Cynthia Bott* and *James D. Horwitz*, for the appellant
(plaintiff).

*Ellen M. Costello*, for the appellees (defendants).

*Opinion*

GRUENDEL, J. The plaintiff, Elaine Vitali, appeals from the judgment of the trial court rendered after the jury returned a verdict in favor of the defendants, Southern New England Ear, Nose, Throat & Facial Plastic Surgery Group, LLP (Southern New England) and Paul L. Fortgang. On appeal, the plaintiff claims that the trial court improperly allowed the defendants' expert witness to express opinions that were beyond the scope of what had been previously disclosed to the plaintiff, in violation of Practice Book (2008) § 13-4 (4).[1] We disagree and affirm the judgment of the trial court.

The underlying facts giving rise to this appeal are largely undisputed. On May 10, 2006, the plaintiff underwent facial surgery to remove a benign tumor in her right parotid gland. The surgery was performed by Fortgang, an otolaryngologist at Southern New England. During the surgical procedure, Fortgang transected the facial nerve and then later repaired it. The plaintiff alleged in the complaint that, as a result of the procedure, she suffered, inter alia, an impairment to the facial nerve resulting in a limited ability to control the muscles in her face.[2]

The plaintiff filed a negligence action against Southern New England and Fortgang in 2008. In the operative complaint, the plaintiff alleged that Fortgang had breached his duty of care under the theory that he had, inter alia, failed to properly identify and protect the facial nerve during the procedure. The plaintiff further alleged that the breach was the proximate cause of her injuries. The case proceeded to trial in November, 2012, and featured a battle of opposing expert witnesses. The plaintiff presented the testimony of James Lucarini, an otolaryngologist, while the defendants countered with the testimony of Dale Rice, also an otolaryngologist. Lucarini testified, on the basis of his medical expertise, that Fortgang breached the professional standard of care and that the plaintiff's injuries were the proximate cause of that breach. Rice, on the other hand, testified that transection of the facial nerve was an unavoidable risk of the procedure and that Fortgang had not deviated from the professional standard of care. During the defendants' direct examination of Rice, the plaintiff objected to several questions on the basis that these questions would elicit opinion testimony that was beyond the scope of the prior disclosure required under Practice Book § 13-4 (4). The court overruled the objections and allowed Rice's testimony. On November 19, 2012, the trial concluded, with the jury returning a general verdict in favor of the defendants.[3]

On November 27, 2012, the plaintiff filed a motion to set aside the verdict and a motion for a new trial. In support of these motions, the plaintiff again asserted that the court had improperly allowed Rice to testify

to opinions that had not been previously disclosed in either the defendants' witness disclosure statement or during Rice's deposition. Specifically, the plaintiff cited eight questions asked by the defendant's counsel on direct examination of Rice that, the plaintiff alleged, amounted to an unfair surprise and a violation under Practice Book § 13-4 (4).[4] On January 25, 2013, the court denied both motions on the grounds that the questions asked of Rice were "encompassed within the scope of an adequate § 13-4 (4) disclosure" and were permissible "even if the answers [had] not been fleshed out by opposing counsel at a deposition or otherwise." This appeal followed.

As a preliminary matter, we set forth the appropriate standard of review for determining whether the court properly overruled the objections to Rice's expert testimony. "[T]he trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did. . . . Even if a court has acted improperly in connection with the introduction of evidence, reversal of a judgment is not necessarily mandated because there must not only be an evidentiary [impropriety], there also must be harm." (Internal quotation marks omitted.) *Doyle* v. *Kamm*, 133 Conn. App. 25, 30, 35 A.3d 308 (2012). Under an abuse of discretion standard, a court's decision "must be legally sound and there must be an honest attempt . . . to do what is right and equitable under the circumstances of the law, without the dictates of whim or caprice." (Internal quotation marks omitted.) *Sullivan* v. *Yale-New Haven Hospital, Inc.*, 64 Conn. App. 750, 754, 785 A.2d 588 (2001).

The plaintiff claims that the court abused its discretion by allowing Rice to testify to opinions that were beyond the scope of the expert disclosure, and that the alleged error was harmful. We disagree.

We begin by recognizing the well accepted principle that the preclusion of expert testimony is a sanction, and that the decision to impose sanctions rests solely in the discretion of the court. *Vitone* v. *Waterbury Hospital*, 88 Conn. App. 347, 357, 869 A.2d 672 (2005); *Caccavale* v. *Hospital of St. Raphael*, 14 Conn. App. 504, 507, 541 A.2d 893, cert. denied, 208 Conn. 812, 545 A.2d 1107 (1988); *Kemp* v. *Ellington Purchasing Corp.*, 9 Conn. App. 400, 404, 519 A.2d 95 (1986); *Zimny* v. *Cooper-Jarrett, Inc.*, 8 Conn. App. 407, 427, 513 A.2d 1235, cert. denied, 201 Conn. 811, 516 A.2d 887 (1986); *Perez* v. *Mount Sinai Hospital*, 7 Conn. App. 514, 519, 509 A.2d 552 (1986). In reviewing the court's decision, every reasonable presumption will be made in favor of its correctness. *Vitone* v. *Waterbury Hospital*, supra, 357.

The court is not required to preclude expert testimony when there is a discrepancy between the previously disclosed subject matter of an expert witness' testimony and the proffered testimony at trial. *Kemp* v. *Ellington Purchasing Corp.*, supra, 405. It is only required to exercise its discretion in deciding whether to impose the sanction of preclusion, impose a lesser sanction, or impose no sanction at all. Id. "That is a decision left to the trial court's best judgment, subject on appeal only to the test of abuse of discretion." Id.

Reviewing the present case under this standard, it is readily apparent that the court acted well within its discretion when it allowed Rice's testimony. On November 16, 2012, the plaintiff objected to a question asking Rice whether Fortgang deviated from the standard of care. In response, the court granted the plaintiff's counsel the opportunity to be heard, removing the jury from the courtroom in order to address the issue. The court then heard arguments from the plaintiff's and the defendant's counsel, while also reviewing the transcript of Rice's deposition. After weighing all of the evidence before it, the court determined that the expert disclosure under Practice Book § 13-4 (4) had sufficiently covered Rice's expert testimony and therefore the plaintiff's objection was overruled. Even if the court had found a discrepancy between the testimony and the disclosure, however, it was still not obligated to preclude the testimony. *Kemp* v. *Ellington Purchasing Corp.*, supra, 9 Conn. App. 405. As a result, the court did not abuse its discretion when it allowed Rice's testimony.

The trial court determined that the plaintiff did not meet her burden of showing how the admission of the challenged testimony was inconsistent with the Practice Book or our case law. At trial, the plaintiff argued that Rice's testimony included opinions separate and distinct from what had been previously disclosed. The court disagreed, stating that the testimony had been adequately disclosed prior to trial.[5] We now consider the propriety of that determination.

We begin with the disclosure requirements of Practice Book § 13-4 (4). Section 13-4 (4) requires the disclosure of "(1) the name of the expert witness; (2) the subject matter on which the expert is expected to testify; (3) the substance of the facts and opinions to which the expert is expected to testify; and (4) a summary of the grounds for each opinion." *Wexler* v. *DeMaio*, 280 Conn. 168, 180, 905 A.2d 1196 (2006). A disclosure satisfies the requirements of this section when it alerts the opposing party as to the *basic nature* of the party's claim. *Klein* v. *Norwalk Hospital*, 299 Conn. 241, 252–53, 9 A.3d 364 (2010) ("[t]his court never has articulated a requirement that a disclosure include an exhaustive list of each specific topic or condition to which an expert might testify as the basis for his diagnosis; dis-

closing a categorical topic such as 'causation' generally is sufficient to indicate that testimony may encompass those issues"). The purpose of a disclosure is to allow the opposing party the opportunity to prepare his or her case and to eliminate unfair surprise by revealing the essential elements of the party's claim. *Wexler* v. *DeMaio*, supra, 188. Expert witness disclosure is "not intended to elicit an overly detailed exposition of the expert's opinion." (Internal quotation marks omitted.) Id., 189. In summary, "a disclosure fails to comply with § 13-4 (4) *only* when the disclosure fails to apprise the defendant of the basic details of the plaintiff's claim." (Emphasis added.) Id., 187.

A review of the record supports the court's conclusion that the subject matter and substance of the challenged testimony was properly disclosed prior to the trial. On April 5, 2012, the defendants filed an expert disclosure form, revealing the scope of Rice's proposed testimony at trial.[6] The disclosure explicitly stated that Rice was expected to testify that, in his professional opinion, Fortgang had not breached the standard of care during the procedure. Section II of the disclosure stated: "Dr. Rice . . . will testify regarding the surgical aspects of this case. He will testify regarding . . . standard of care issues." Moreover, section III of the disclosure provided further detail. It provided in relevant part: "Dr. Rice will testify that Dr. Fortgang did not deviate from the standard of care nor did he proximately cause this patient any injury or damages. In his opinion, Dr. Fortgang met the standard of care in his care and treatment of the plaintiff." The disclosure also revealed that Rice would discuss several specific actions taken by Fortgang during the procedure and opine as to why those actions were consistent with the standard of care. Finally, the disclosure explicitly stated that Rice "will refute the criticisms of the plaintiff's experts and the allegations listed in the plaintiff's complaint." After this disclosure was filed, plaintiff's counsel had an opportunity to depose Rice, as provided by Practice Book § 13-4 (4),[7] and, on October 19, 2012, the plaintiff conducted an approximately two hour deposition of Rice.

Under these facts, the court did not abuse its discretion when it allowed Rice's testimony. The plaintiff specifically challenges six questions on appeal, all of which relate to the standard of care. The first question asked Rice to directly refute the opinion of Lucarini,[8] which was properly covered by the portion of the disclosure that stated Rice "will refute the claims of plaintiff's experts." The second, fifth, and sixth questions can be summarized as requesting Rice to confirm that (1) Fortgang took every precaution possible,[9] (2) he ruled out alternative measures,[10] and (3) he had, at all times, complied with the standard of care.[11] In other words, Rice was being asked whether Fortgang had complied with the standard of care, which was covered in the sections of the disclosure that stated, "[Rice] will testify

regarding . . . standard of care issues," and "Rice will testify that Dr. Fortgang did not deviate from the standard of care . . . ." Finally, questions three and four are questions regarding Fortgang's decision to cut,[12] and his inability to identify,[13] the facial nerve. This subject matter was properly divulged in the portion of the disclosure statement that stated, "[Rice] will testify about how this surgery is performed, and how it was performed by Dr. Fortgang and how the nerve was identified." The challenged testimony was directly encompassed within the expert disclosure and the plaintiff's argument that the basic details or essential elements of Rice's testimony had not been disclosed fails. As a result, we cannot conclude that the court abused its discretion in allowing the testimony at trial.

Furthermore, the present case is readily distinguishable from two cases relied upon by the plaintiff, *Kemp* v. *Ellington Purchasing Corp.*, supra, 9 Conn. App. 400, and *Sturdivant* v. *Yale-New Haven Hospital*, 2 Conn. App. 103, 476 A.2d 1074 (1984). In *Kemp*, this court upheld the trial court's preclusion of expert testimony on the issue of constructive notice of a dangerous condition when the prior expert disclosure had explicitly stated that testimony would be limited to the issue of causation. *Kemp* v. *Ellington Purchasing Corp.*, supra, 401–402. In *Sturdivant,* this court upheld the trial court's preclusion of expert testimony on the issue of causation when the prior disclosure revealed that testimony would be limited to standard of care issues and departures therefrom. *Sturdivant* v. *Yale-New Haven Hospital*, supra, 104–105, 108. In the present case, the disclosure provided no such limitations. Rice's disclosure form and deposition testimony clearly indicated that his expected testimony would include issues of standard of care, breach, and proximate cause.[14]

In conclusion, the court did not abuse its discretion in allowing Rice's testimony as to the standard of care. The record clearly indicates that plaintiff's counsel was adequately apprised of the basic details of the expert's testimony. The disclosure and deposition testimony confirmed that Rice would opine that the injury to the plaintiff's facial nerve was not the result of Fortgang's allegedly negligent conduct. The fact that Rice's testimony actually provided greater detail and specificity than had been disclosed is irrelevant. Such granularity is not required by the Practice Book or our case law. To require such specificity of disclosure would place a burden on parties that is inconsistent with the underlying purpose of Practice Book § 13-4 (4), which is only to assist parties in preparation of their case and to avoid unfair surprise. Furthermore, we acknowledge that even in cases where disclosure is found to be insufficient, the court has broad discretion in deciding whether to impose the sanction of preclusion. *Kemp* v. *Ellington Purchasing Corp.*, supra, 9 Conn. App. 405. In this case, the plaintiff has not met her burden of

showing that the disclosure was inconsistent with the Practice Book, or that failure to preclude the expert testimony amounted to an abuse of discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Practice Book § 13-4 was amended on June 30, 2008. The amendment, however, applied only to cases filed after January 1, 2009. Service of process in this case was filed on June 27, 2008, and therefore the 2008 version of § 13-4 governs this appeal. For convenience, all references in this opinion to Practice Book § 13-4 are to the 2008 revision unless otherwise noted.

[2] The plaintiff alleged limitations to, inter alia, her ability to smile, raise her right eyebrow, and close her right eyelid.

[3] The jury answered "No" to the following interrogatory: "Has the plaintiff proven, by a fair preponderance of the evidence and credible expert testimony, that the defendant Dr. Paul L. Fortgang breached or deviated from the recognized prevailing professional standard of care for a board certified otolaryngologist in his treatment of the plaintiff Elaine Vitali?"

[4] On appeal, the plaintiff challenges only six of the questions.

[5] At trial, the court concluded, after both hearing the position of the parties and evaluating Rice's deposition transcript: "[T]he objection is overruled. . . . I'm reaching a conclusion that this opinion is confined within the disclosure."

In its memorandum of decision on the plaintiff's motion to set aside the verdict and motion for a new trial, the court stated: "Questions, like those put here, encompassed within the scope of an adequate § 13-4 (4) disclosure, are permissible even if the answers have not been fleshed out by opposing counsel at a deposition or otherwise. To conclude otherwise would be far too restrictive of a party's right to examine a properly disclosed witness."

[6] The disclosure provided in relevant part:

"II. Subject Matter on Which Expert is Expected to Testify: Dr. Rice, a board certified otolaryngologist, will testify regarding the surgical aspects of this case. He will testify regarding causation, damages and standard of care issues.

III. The Substance of Facts and Opinions to Which Each Expert Is Expected to Testify: Dr. Rice will testify that Dr. Fortgang did not deviate from the standard of care nor did he proximately cause this patient any injury or damages.

"In his opinion, Dr. Fortgang met the standard of care in his care and treatment of the plaintiff. He will testify that injury of and/or cutting of a nerve during this surgical procedure is a risk of the procedure that Dr. Fortgang had warned the plaintiff of prior to surgery. He will testify about how this surgery is performed, and how it was performed by Dr. Fortgang and how the nerve was identified. He will testify that Dr. Fortgang properly utilized the nerve stimulator and that use of a nerve monitor in this surgery is not the standard of care. He will testify that both nerve monitors and nerve stimulators are unreliable. Dr. Rice will further testify that at the optic branch the nerve was involved with the tumor and there was no way Dr. Fortgang or any surgeon could have avoided injury to the nerve branch at that level. He will testify that Dr. Fortgang appropriately repaired the nerve when he timely identified what had occurred. He will explain how nerves and veins can look similar especially when you are putting on traction to get exposure.

"Dr. Rice will offer an opinion on the plaintiff's current status and prognosis based on the records disclosed by the plaintiff. He will refute the criticisms of the plaintiff's experts and the allegations listed in the plaintiff's complaint. He will testify regarding his opinions on prognosis and damages. More specifically, he will testify that the plaintiff's current condition was not proximately caused by any negligence of Dr. Fortgang. He will testify that the plaintiff has failed to mitigate her damages in that she has refused to have a gold weight placed in her eyelid, animation surgery and/or a sling procedure, all of which could have significantly improved her damage issues."

[7] Practice Book (2008) § 13-4 (4) provides in relevant part: "Any expert witness disclosed pursuant to this rule within six months of the trial date shall be made available for the taking of that expert's deposition within thirty days of the date of such disclosure. . . ."

[8] "[The Defendant's Counsel]: Dr. Lucarini told this jury that Dr. Fortgang deviated from the standard of care by failing to follow this unknown structure deep into the parotid gland in search of the branching . . . point . . . .

Do you agree that that is what the standard of care required?

"[Rice]: No.

"[The Defendant's Counsel]: Okay. And can you explain to the jury why that maneuver would be a very dangerous maneuver?

"[Rice]: Well, if you're following a structure into the parotid gland and it happens to not be the nerve, you're running the risk of actually cutting the nerve while you're doing it."

[9] "[The Defendant's Counsel]: So, doctor, with reasonable medical probability, did Dr. Fortgang's decision to rule out by all the means he felt he had available to him, that the structure was the facial nerve, comply with the standard of care? . . .

"[Rice]: Yes.

"[The Defendant's Counsel]: Okay. And, doctor, were there any other techniques available to him or had he exercised all of them?

"[Rice]: I think he used every technique that I know of."

[10] "[The Defendant's Counsel]: And do you believe that Dr. Fortgang did everything he possibly could and all the techniques known to [otolaryngological] surgeons to protect the facial nerve during the parotidectomy that he performed on this plaintiff? . . .

"[Rice]: Yes."

[11] "[The Defendant's Counsel]: Doctor, with reasonable medical probability, did Dr. Fortgang, at all times, in performing the surgery, comply with the standard of care? . . .

"[Rice]: Yes."

[12] "[The Defendant's Counsel]: And with reasonable medical probability, did Dr. Fortgang's decision to divide the structure at this point, to cut it, comply with the standard of care? . . .

"[Rice]: Yes.

"[The Defendant's Counsel]: And can you tell the jury the basis of that opinion, doctor?

"[Rice]: Well, again, he had tested the structure every way that I know to test it, to find out if it was or wasn't the nerve, and it didn't appear to be the nerve. Something deeper was stimulating. So to get to it, the deeper structure, you'd have to cut this to get it out of the way."

[13] "[The Defendant's Counsel]: Do you believe that his inability to identify that structure initially as the facial nerve, in any way, failed to comply with the standard of care? . . .

"[Rice]: No."

[14] See footnote 6 of this opinion.

---